United States District Court
District of Maine

| | | |
|---|---|---|
| John Doe,<br><br>Plaintiff,<br>v.<br><br>Sara Smith,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No. 2:23-cv-00423-JAW |

**Defendant's Opposition to Motion to File First Amended Complaint Under Seal**

Relying on the criminal section of the Court's local rules, Plaintiff "John Doe" filed a motion to file a first amended complaint entirely under seal. ECF 28, p. 1 (citing Local Rule 157.6(b)). Defendant "Sara Smith" opposes both the motion to seal and the motion to file the first amended complaint.

***Motion to Seal.*** Disregarding the Court's procedures for filing sealed documents and pleadings under Local Rule 7A, Plaintiff, without seeking Defendant's position, or seeking any prior, less restrictive alternatives, seeks to seal his entire first amended complaint. Plaintiff takes an overbroad, blanket approach to sealing despite the fact that Plaintiff *publicly* filed his initial complaint in November 2023. ECF 1. Plaintiff was permitted to proceed using pseudonyms (and to which Defendant does not object). Further, although Plaintiff filed this case in November, he has not yet filed a motion seeking a confidentiality order (and still has not done so despite this being pointed out to Plaintiff's counsel during the discovery dispute hearing on February 6, 2024).

Plaintiff's justification for filing the first amended complaint under seal is that shortly after he publicly filed the initial complaint, a number of media outlets picked up on the case and contacted Plaintiff's counsel for an interview. ECF 28, p. 5-6. The fact that the Plaintiff brought attention to this matter himself does not justify sealing the entirety of his first amended complaint,

particularly where the amended complaint contains minor edits that can easily be redacted to protect identification of the parties and their minor daughter (to which Defendant does not object). Defendant does object, however, to the sealing of the entire first amended complaint.

"When a court considers a motion to seal, the court must be mindful that the law recognizes a presumption 'of public access to judicial proceedings and records.'" *Brown v. Prudential Life Ins. Co. of Am.*, 2023 WL 2413992, at *1 (D. Me. Feb. 7, 2023) (quoting *United States v. Kravetz*, 706 F.3d 47, 52 (1st Cir. 2013)). "While the Court understands that most parties would prefer to limit the personal information that is available on the public docket, to the extent the information is relevant to the Court's assessment of an issue, claim, or defense, the public interest is of 'paramount' significance." *Gladu v. Me. Dept. of Corrections*, 2022 WL 17832711, at *1 (D. Me. Dec. 22, 2022) (quoting *FTC v. Standard Fin. Mgmt. Corp.*, 830 F.2d 404, 410 (1st Cir. 1987)).

As this Court has previously noted, the First Circuit in *Standard Financial Management* made plain "that relevant documents which are submitted to, and accepted by, a court of competent jurisdiction in the course of adjudicatory proceedings, become documents to which the presumption of access applies." *McKenzie v. Brannan*, 2020 WL 6647106, at *4 (D. Me. Nov. 12, 2020) (quoting *Standard Fin. Mgmt.*, 830 F.2d at 409). As part of its analysis, the court "must then 'weigh the presumptively paramount right of the public to know against the competing private interests at stake.'" *United States ex rel. Nargol v. DePuy Orthopedics, Inc.*, 69 F.4th 1, 15-16 (1st Cir. 2023) (quoting *Standard Fin. Mgmt.*, 830 F.2d at 410). This presumption of access applies to *all* documents the parties submit to be considered in an adjudicatory ruling, including not only to Plaintiff's complaint which was filed publicly, but as follows, to Plaintiff's first amended complaint which is cut and pasted from the initial complaint, adding non confidential information. *See Tourangeau*, 2022 WL 768688, at *4. Here, the proposed amended complaint and its exhibits,

as with the initial complaint, are the central "cornerstone of every case, the very architecture of the lawsuit, and access to the complaint is almost always necessary if the public is to understand a court's decision.'" *Bernstein v. Bernstein Litowitz Berger & Grossmann LLP*, 814 F.3d 132, 139 (2d Cir. 2016) (quoting *FTC v. Abbvie Prods. LLC*, 713 F.3d 54, 62 (11th Cir. 2013)). Further, motions to seal need not be filed under seal as they can adequately describe what needs to be sealed generically, or through selective redaction. *See, e.g.*, *Doe v. City of New York*, 1:22-CV-7919, 2022 WL 15153410, at *4 (S.D.N.Y. Oct. 26, 2022) ("Courts within this Circuit have tended to treat a motion to seal as a judicial document that is entitled to a strong presumption of public access.").

Finally, "redaction [is] a 'viable tool' where only a portion of the judicial record contains confidential information." *Tourangeau*, 2022 WL 768688, at *1 (brackets added and quoting *Kravetz,* 706 F.3d at 63). Applying these standards, Plaintiff's motion to seal the entirety of the first amended complaint should be denied. Instead, limited redactions of any new allegations not contained in the initial complaint that identify the parties and thus are covered by the Court's ruling on pseudonyms, or that trench upon the privacy requirements of Local Rule 5.2, will suffice.

***Motion to Amend.*** The motion to amend should be denied because it is futile, brought in bad faith, and based on undue delay. Plaintiff has not cured the defects identified in Defendant's Rule 11 motion that the critical allegations in the initial complaint –that the Defendant violated the NDA by telling Plaintiff's father and stepmother about Plaintiff's winnings – are false. ECF 31.

It is settled law that an NDA is not violated by discussing or "disclosing" information that has already been disclosed. "[A] nondisclosure agreement is overly broad and invalid when the agreement prohibits disclosure of information that 'is not in fact confidential,' because it is public knowledge." *TLS Mgmt. & Mktg. Servs., LLC v. Rodriguez-Toledo,* 966 F.3d 46, 58 (1st Cir. 2020) (citations omitted). This is especially the case where, as here, the Plaintiff was the source of the

disclosure to his father and stepmother, neither of whom signed an NDA. "Information cannot be confidential if the possessor of the information does not take reasonable security precautions to protect it." *Knapp Schenck & Co. Ins. Agency, Inc. v. Lancer Mgmt. Co.*, 2004 WL 57086, *8 (D. Mass. Jan. 13, 2004); *cf. N.E. Coating Techs., Inc. v. Vacuum Metallurgical Co., Ltd.*, 684 A.2d 1322, 1324 (Me. 1996) (no trade secret protection for information distributed to individuals with no duty to maintain its secrecy).

While Plaintiff has repackaged these allegations in the amended complaint, he continues to claim that in the fall of 2023 Defendant told his father and stepmother about Plaintiff's lottery winnings. ECF 28-1, ¶¶ 34-40. As set forth in Defendant's motion for sanctions, Plaintiff's father's sworn declaration flatly contradicts the allegations in both the initial and amended complaints: It was the Plaintiff, *not the Defendant*, who told his father and stepmother that he won over a billion dollars in the lottery in late February or early March 2023. ECF 31, p.2; ECF 31-1, ¶¶ 4-5. And, it was the Plaintiff's father — who is not subject to an NDA — who told Plaintiff's sister, among others, about Plaintiff's winning, *not the Defendant*. ECF 31, p.2; ECF 31-1 ¶¶ 6-7.

Plaintiff's father's declaration states, in relevant part:

> 4. I understand that [Plaintiff] claims that he learned in September of 2023, that [Defendant] disclosed to me and my wife ([Plaintiff's] stepmother), that [Plaintiff] had won the Maine State Lottery, And, that as a result of [Defendant's] disclosure to us, other third parties including [Plaintiff's] sister, became aware of that fact. That is not correct.
>
> 5. In or around February or March of 2023, [Plaintiff] came to my house in [redacted] and informed me and my wife that he won a large amount of money in the Maine State Lottery.
>
> 6. Neither I nor my wife were asked to or ever signed a nondisclosure agreement with respect to [Plaintiff's] lottery winnings. I subsequently told [Plaintiff's] sister and others of that fact.
>
> 7. I was the one who told [Plaintiff's] sister about his having won the Maine State Lottery, not [Defendant].

Father's Declaration, ECF 31-1 ¶¶ 5-7. Despite providing this information to Plaintiff and his counsel during the 21-day safe harbor period prior to filing the motion for sanctions, Plaintiff repeats his false narrative in the proposed first amended complaint. ECF 28-1, ¶¶ 34-40.

*Compare,*

> 18. Upon information and belief, and as a result of Defendant's unauthorized disclosure of Protected Subject Matter to John Doe's father and stepmother, other parties are now in possession of John Doe's Protected Subject Matter, including his sister. ECF 1, ¶ 18.

*With,*

> 40. Upon information and belief, and as a result of Defendant's unauthorized disclosure of Protected Subject Matter to John Doe's father and stepmother, other parties are now in possession of Protected Subject Matter, including John Doe's sister and – as reflected in a declaration filed by Defendant – "others." Complaint ECF 28-1 ¶ 40.

Similarly, paragraph 16 and 17 of the Complaint alleges that Plaintiff learned in September of 2023, that Defendant purportedly violated the NDA by disclosing protected information to his father and stepmother without Plaintiff's permission. ECF 1, ¶¶ 16, 17.

*Compare,*

> 16. In or about September 2023, John Doe discovered that Defendant has violated the NDA by directly or indirectly disclosing Protected Subject Matter, without John Doe's permission, to persons other than those defined as an "Authorized Recipient" in paragraph 1(a) of the NDA and by failing to report these disclosures to John Doe as required by paragraph 4 of the NDA (*see id.* at ¶¶ 1(a) and (4)). ECF 1, ¶ 16.
>
> 17. Upon information and belief, Defendant has disclosed Protected Subject Matter in one or more telephone communications with John Doe's father and stepmother. 1, ¶ 17.

*With,*

> 35. In or about November 2023, John Doe discovered a voicemail message from John Doe's father to Defendant stating in relevant part, "You've asked [John Doe's stepmother] if I've said anything to John Doe's sister about [John Doe's] money . . ." ECF 28-1, ¶ 35.
>
> 36. John Doe's father and stepmother are not "Recipients" as defined by paragraph 1(a) of the NDA. (*See id.*). ECF 28-1, ¶ 36.

While Plaintiff adds some additional verbiage to the proposed amended complaint, he fails to refute that the underlying factual basis for the allegations - that Defendant told his parents about his lottery winnings - are false.

Leave to amend under Rule 15 need not be provided where, as here, the underpinnings of the amended complaint are false, and the complaint is being brought for the improper purpose of harassing and bullying the Defendant to extract concessions in their underlying custody and child support case. ECF 31 at 6-7; ECF 31-2 ¶ 29. *Foman v. Davis*, 371 U.S. 178, 182 (1962) (leave freely granted, "[i]n the absence of any apparent or declared reason – such as undue delay, bad faith or dilatory motive on the part of the movant . . ."). As this Court has stated, "the liberal amendment policy prescribed by Rule 15(a) does not mean that leave will be granted in all cases. . . . The Court may deny a request to amend the complaint if the request is characterized by 'undue delay, bad faith, futility [or] the absence of due diligence on the movant's part.'" *Van Eck v. American Security Ins. Co.*, 2023 WL 2991190, at *2 (quoting *Thurlow v. York Hosp*., 2017 WL 90345, at *3 (D. Me. Jan 10, 2017) (quoting 6 CHARLES ALAN WRIGNT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1487)). *Liberty Leather Corp. v. Callum*, 653 F.2d 694, 700 (1st Cir. 1981) ("We see no abuse of discretion in the court's refusal to grant leave to amend the complaint to add a claim without legal merit").

Faced with his father's sworn declaration flatly contradicting Plaintiff's allegations in the original complaint, the Proposed First Amended Complaint does not withdraw the core empty kernel of this lawsuit. *See* ECR 28-,1¶ 40 ("as a result of Defendant's unauthorized disclosure of Protected Subject Matter to John Doe's father and stepmother, other third parties are now in possession of Protected Subject Matter, including John Doe's sister. . . ."). We expect Plaintiff to argue that the first amended complaint is actionable because the Defendant *may* have disclosed

more than just the fact that Plaintiff won the lottery to his father and others, and that "further investigation and discovery" will reveal this.[1] Such an argument is a strained reading of the NDA and reinforces that the continuation of this suit in light of the father's and Defendant's declarations is nothing more than an unsupported fishing expedition.

Additionally, Defendant has explained why she believed this litigation was brought in bad faith to bully her and to extract concessions in on-going family court matters concerning their daughter. ECF 31-2 (Defendant Dec. ¶ 29). Reinforcing that this litigation was filed for an improper reason, Plaintiff adds a "new" section to the amended complaint alleging that Defendant violated the NDA by seeking an emergency order in state court to have her child returned after the child was kidnapped by the Plaintiff, without first seeking his permission to do so. ECF 28-1, ¶¶ 27-33. Plaintiff claims that what Defendant should have done, was to seek his permission to make disclosures to the state court before filing her emergency motion, during the very time frame he had taken Defendant's daughter. In other words, Defendant should have waited to obtain the kidnapper's consent before filing a complaint to have her child returned. To state these allegations is to refute them and makes plain this case is nothing more than a pressure campaign against the Defendant. ECF 31-2, ¶¶13-27. The kidnapper cannot hold the keys to the courthouse.

As set out in Defendant's Declaration attached to the motion for sanctions, shortly after she signed the NDA, Defendant was informed that Plaintiff's "security team" believed that their child was in danger of kidnapping, and as a result, Plaintiff was going to take their daughter away for four to six weeks. ECF 31-2, ¶¶ 13, 14. Defendant was assured she could speak to her daughter at any time, and that their daughter would wear a GPS watch so Defendant could know of her daughter's whereabouts at all times. *Id.* ¶14. The watch, however, was turned off and mailed back

[1] Plaintiff makes this argument in a tit for tat sanctions motion that was served on defense counsel yesterday.

to the Defendant. *Id.* ¶¶ 21, 22. Defendant also learned that, unbeknownst to her, her daughter's school had received a letter from Plaintiff's attorney stating that her daughter would not be returning to school for the remainder of the year. *Id.* ¶ 23. Defendant unsurprisingly became distressed and concerned, and became fearful that Plaintiff had kidnapped their child as a result of these actions and the lack of information being provided by Plaintiff about their daughter's whereabouts. *Id.* ¶¶ 23, 24. As a result, Defendant's family law attorney attempted to negotiate arrangements for the return of the child. *Id.* ¶ 25. Plaintiff offered money in exchange for primary custody of their child, an arrangement to which Defendant would not agree. *Id.* An emergency motion was then filed in state court, which resulted in an order for return of the child, who was returned home to her mom in mid-March. *Id.* ¶¶ 26-27. The family law matter is ongoing with open and ongoing issues relating to custody and child support. *Id.* ¶ 28.

Plaintiff's new allegations that the Defendant violated the NDA by failing to obtain his permission prior to seeking an emergency order for return of her child, or making other filings in the state court proceeding, is unenforceable as against public policy. Restatement (Second) of Contracts § 278 ("A promise or other term of an agreement is unenforceable on grounds of public policy if legislation provides that it is unenforceable or the interest in its enforcement is clearly outweighed in the circumstances by a public policy against the enforcement of such terms."). A provision of a contract that hinders a court's ability to assess and address issues regarding the best interest of a child is void and unenforceable. *Riemann v. Toland*, 2022 ME 13, ¶ 39 & n.12 (waiver of attorney fees in premarital agreement unenforceable); *Court v. Kiesman*, 2004 ME 72, ¶ 14 (parents cannot bargain away child support obligations). Further, NDA's, confidentiality agreements, and other contracts are not enforceable if they would prevent the reporting of improper or illegal conduct, as has occurred here. *See Pres. of Bates College v. Congregation of Beth*

*Abraham*, No. CV-01-21, 2001 WL 1671588, *5 (Me. Super. Ct. Feb. 13, 2001) ("A contract that calls for a violation of law is void as against public policy."); *Cosby v. Am. Media, Inc.*, 197 F. Supp. 3d 735, 741–42 (E.D. Pa. 2016) (nondisclosure agreement unenforceable to the extent it prevented signatories from voluntarily disclosing information about crimes to law enforcement). Because this application of the NDA is unenforceable, the amendment is futile.

Moreover, this "new" portion of the amended complaint could have been brought last year, when the initial complaint was filed, as it stems from state court filings made in early 2023. Plaintiff's delay is yet an additional reason to deny his motion to amend, as the First Circuit has "explicitly condemned a 'wait and see' approach to pleading, whereby plaintiffs 'having the needed information, deliberately wait in the wings… .'" *Kader v. Sarepta Therapeutics, Inc.*, 887 F.3d 48, 61 (1st Cir. 2018) (citations omitted); *In re Lombardo*, 755 F.3d 1, 3 (1st Cir. 2014) ("[I]n assessing whether delay is undue, a court will take account of what the movant knew or should have known and what he did or should have done."). Similarly, issues concerning confidentiality of state court filings could have been made in the state family court which is fully capable of addressing such issues. Plaintiff took no steps to seal the state court matter *until over a year after its initial filings*, and only then after his own public filings generated unfavorable press coverage.

Finally, Plaintiff's efforts to obtain injunctive or other relief from this Court, enjoining or awarding damages from the Defendant for making filings in another state's family court because it allegedly violated an NDA, raises jurisdictional issues.[2]

---

[2] Even if Plaintiff asserted that important *federal* rights were at issue in this proceeding—which he has not—the Court must abstain from exercising jurisdiction over any claim that would interfere with the ongoing state court dispute. *See Younger v. Harris*, 401 U.S. 37 (1971). Child welfare is a traditional area of state concern warranting abstention. *See Moore v. Sims*, 442 U.S. 415, 423 (1979); *Amadi v. Dept of Children & Families*, 245 F. Supp. 3d, 316, 321 (D. Mass. 2017). A federal district court should not issue an injunction that would have the effect of enjoining a family dispute in state court. *See Seguin v. Chafee*, 2012 WL 6553621, at *4-*7 (D.R.I. Dec. 14,

Defendant respectfully requests that the Court deny Plaintiff's motion to file first amended complaint under seal and deny Plaintiff's motion to file first amended complaint.

Dated: February 23, 2024

Respectfully submitted,

/s/Daniel A. Nuzzi
Daniel A. Nuzzi
Peter J. Brann
Hannah L. Wurgaft
Brann & Isaacson
113 Lisbon St., P.O. Box 3070
Lewiston, ME 04243-3070
(207) 786-3566
dnuzzi@brannlaw.com
pbrann@brannlaw.com
hwurgaft@brannlaw.com

*Attorneys for Defendant*

2012) (denying preliminary injunction and dismissing action seeking, among other relief, to enjoin family court proceedings).