UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| JOHN DOE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:23-cv-00423-JAW |
| | ) | |
| SARA SMITH, | ) | |
| | ) | |
| Defendant, | ) | |
| | ) | |
| MAINE TRUST FOR LOCAL | ) | |
| NEWS, L3C, | ) | |
| | ) | |
| Intervenor. | ) | |

**ORDER ON MOTION TO UNSEAL**

An intervening local newspaper brings a motion to unseal the sealed court docket entries in a case in which the winner of a lottery has filed suit to enforce the provisions of a non-disclosure agreement against his former partner, the mother of their minor child. After the Court reviews the state of the law on public access to judicial records in the First Circuit, the Court rules on each docket entry and orders each either to remain sealed or be unsealed and has issued a redacted version of this order pending any appeal.

## I.    BACKGROUND

### A.    The Complaint and Sealing Orders

On November 14, 2023, John Doe, acting under a pseudonym, filed a civil action in this Court against Sara Smith, another pseudonym, asserting that she breached a Non-Disclosure Agreement (NDA) and caused the Plaintiff damages.

*Compl.* (ECF No. 1).  The Plaintiff also sought equitable relief, including an injunction against Ms. Smith.  *Id.* at 6.  In the complaint, Mr. Doe alleges that he was the winner of the Maine State Lottery, *Id.* ¶ 5, that Ms. Smith is the mother of his minor daughter, *Id.* ¶ 6, and that Ms. Smith entered into a NDA to "promote the safety and security of John Doe, [herself], and their daughter" and to avoid "the irreparable harm of allowing the media or the public in general to discover, *inter alia*, John Doe's identity, physical location, and assets."  *Id.* ¶ 7.

Mr. Doe filed several motions to seal documents filed in this case based on his view that the revelation of his name will cause him irreparable harm, and the Court has granted those motions.  *See, e.g.*, *Mot. for Leave to Proceed Under Pseudonym and for Protective Order* (ECF No. 4) (under seal); *Order* (ECF No. 6); *Emer. Mot. to Seal Def.'s Mot. for Sanctions* (ECF No. 34) (under seal); *Order* (ECF No. 35).  Since then, the Magistrate Judge has suggested that the "Plaintiff appears to be under the misimpression that this case will be conducted entirely under seal" and reminded the Plaintiff that if he wants a document sealed, he must comply with Local Rule 7A. *Order* (ECF No. 66).

### B.    Maine Trust's Intervenor Status and Motion to Unseal

On February 20, 2024, the Maine Trust for Local News, L3C d/b/a Portland Press Herald/Maine Sunday Telegram (the Maine Trust) moved to intervene in this lawsuit with a view toward moving to unseal the docket entries.  *Mot. to Intervene by Me. Trust for Local News* at 1-4.  On February 21, 2024, Sara Smith quickly responded and stated that not only did she not object to the Maine Trust's motion to intervene

but that she had objected to various motions to seal by John Doe. *Def.'s Resp. to Me. Trust's Mot. to Intervene* (ECF No. 47) (*Def.'s Resp.*). On March 6, 2024, John Doe filed his opposition to the Maine Trust's motion to intervene. *Pl.'s Resp. in Opp'n to Mot. to Intervene by Me. Trust for Local News* (ECF No. 53) (*Pl.'s Opp'n*). On March 18, 2024, the Maine Trust filed its reply. *Reply in Support of Mot. to Intervene by the Me. Trust for Local News* (ECF No. 58) (*Me. Trust Reply*). On March 22, 2024, the Court granted the Maine Trust's motion to intervene. *Order on Mot. to Intervene* (ECF No. 60).

On February 20, 2024, the Maine Trust also filed a motion to unseal the documents in four docket entries. *Mot. to Unseal by Intervenor Me. Trust for Local News* (EFC No. 43) (*Mot. to Unseal*). On March 12, 2024, Ms. Smith objected in part to the motion to unseal. *Def.'s Resp. to Me. Trust's Mot. to Unseal* (ECF No. 54) (*Def.'s Resp.*). The same day, Mr. Doe opposed the Maine Trust's motion to unseal. *Pl.'s Resp. in Opp'n to Mot. to Unseal by Proposed Intervenor Me Trust for Local News* (ECF No. 55) (*Pl.'s Opp'n*). On March 25, 2024, the Maine Trust replied. *Reply in Supp. of Mot. to Unseal by Intervenor Me. Trust for Local News* (ECF No. 63) (*Reply*).

## II.    THE POSITIONS OF THE PARTIES

### A.    The Maine Trust's Motion

The Maine Trust moves to unseal "(1) the motion to proceed pseudonymously (ECF [No.] 3), (2) the sealed motions to seal (ECF [Nos.] 8, 13, 34), (3) the motion to file a first amended complaint (ECF [No.] 28) and its attachments, including the proposed amended complaint itself and the non-disclosure agreement, and (4) the

motion for sanctions (ECF [No.] 31), and the reply (due Feb. 22, 2024)." *Mot. to Unseal* at 1. Citing Federal Rule of Civil Procedure 5.2, the Maine Trust represents that it does not object to "modest redactions, if they are necessary, of factual details about the parties or about other matters." *Id.* The Maine Trust emphasizes that it is not now moving to depseudonymize the Plaintiff and says that "it cannot effectively do so without understanding the evidence and argument offered by Plaintiff in support of pseudonymity at the start of this case." *Id.* at 3.

Citing caselaw from the First Circuit and elsewhere, the Maine Trust sets out the First Amendment and common law rights of public access. *Id.* at 3-10. The Maine Trust suggests that even if the Court is not inclined to unseal all the "factual details about the parties or other matters," the Court should still unseal with redactions "[t]he entirety of the motions, the proposed amended complaint, and the NDA." *Id.* at 9. For example, the Maine Trust says that the Court should reveal the parties' legal arguments, since they do not implicate the parties' privacy or safety. *Id.* Specifically, again citing caselaw, the Maine Trust stresses that a motion for sanctions is typically considered a judicial record and therefore should not be sealed. *Id.* at 7. Assuming the documents being requested are judicial documents, the Maine Trust contends that the presumption of public access has not been rebutted by the Plaintiff's concerns about safety and privacy. *Id.* at 7-8.

### B.    John Doe's Opposition

In his opposition, Mr. Doe writes that he "strongly disagrees" with the Maine Trust's position and "urges this Court to keep these filings under seal because: (1) the

confidential subject matter of the sealed filings -- traditionally private and embarrassing family affairs with no public ramifications -- overrides the public's presumptive right of access; and (2) the existing threat of physical and emotional harm to Plaintiff and his minor daughter is specific and substantiated and outweighs Maine Trust's interest in catering to the public's craving for sensationalism." *Id.* at 1-2.

Citing First Circuit law, Mr. Doe states that "[n]either the First Circuit nor the Supreme Court recognizes a right under the First Amendment to access documents filed in civil cases." *Id.* at 3. Mr. Doe concedes that the common law presumes a right of public access to judicial records, but he observes that the First Circuit has recognized limitations on that presumption, requiring the Court to balance the competing interests in each request for sealing. *Id.* at 3. Mr. Doe points out that "family affairs, illnesses, embarrassing conduct with no public ramifications, and similar matters" will weigh more heavily against public access. *Id.*

Mr. Doe emphasizes that he is a private citizen whose only "claim to fame" is that he won the lottery. *Id.* at 4. Not only has he successfully sought to remain anonymous, but he and Ms. Smith, the mother of their daughter entered into a NDA "for the sake of their minor daughter." *Id.* Mr. Doe says that he has set forth in other filings the "specific risks, challenges, and harms" he faces if the documents are unsealed. *Id.* Specifically, Mr. Doe maintains that Ms. Smith has filed a motion for sanctions that "sensationalize[s] private claims against Plaintiff that are false and

irrelevant as well as embarrassing family information with no public value that risks identifying the parties and their innocent daughter." *Id.*

Mr. Doe reminds the Court that at least one unknown person has discovered his identity as a result of the pseudonymous lawsuit and has sent him threatening communications. *Id.* at 6. Mr. Doe is worried about the risk of "kidnapping and ransom, virtual kidnapping, and other fraud schemes and threats of extortion" against not only him but also his minor daughter, and he had a security consultant analyze the risks from public exposure. *Id.*

Mr. Doe rejects redaction as "not a practical option in this case." *Id.* at 7. But if the Court orders redaction, he requests that the Court redact: "(1) the identity of the parties and their minor daughter, (2) the parties' private, family affairs, (3) other legal matters involving the parties, and (4) the identify of Plaintiff's agents and business associates." *Id.*

## C.    Sara Smith's Response

Ms. Smith opposes in part the Maine Trust's motion. *Def.'s Opp'n* at 1. First, she argues that the parties should continue to proceed under pseudonyms in this litigation. *Id.* Second, she proposes that the parties should continue to redact personally identifiable information under Rule 5.2. *Id.* Third, she states that "additional *limited* redactions should be permitted to avoid exposing the identity of the parties and their minor child, while respecting the presumption of public access to judicial records." *Id.* (emphasis in original). At the same time, Ms. Smith objects to Mr. Doe's over-sealing and over-redacting. *Id.* Ms. Smith lists those docket entries

to which she has no objection to unsealing and those to which she objects in part; in general, other than asking that the parties' names be redacted, Ms. Smith does not object to unsealing any of the docket entries in this case.  *Id.* at 2-3.

### D.    The Maine Trust's Reply

In its reply, the Maine Trust stresses that at this time, it is not requesting that the Court disclose the parties' names, but that it reserves the right to do so after it reviews what is disclosed.  *Reply* at 1.

Quoting the First Circuit, the Maine Trust discounts Mr. Doe's worries about the public exposure of private and embarrassing information, noting that "the mere fact that judicial records may reveal potentially embarrassing information is not in itself sufficient reason to block public access."  *Id.* at 1-2 (quoting *Siedle v. Putnam Invs., Inc.*, 147 F.3d 7, 10 (1st Cir. 1998)).  The Maine Trust contends that the information here does not outweigh the strong presumption in favor of disclosure and, by contrast, cites cases involving allegations of sexual abuse or medical information as examples of instances where courts often impose sealing restrictions.  *Id.* at 2.

The Maine Trust is unmoved by Mr. Doe's security concerns.  *Id.* at 2-3.  While acknowledging that it has not reviewed the threat mentioned by Mr. Doe because it is under seal, the Maine Trust emphasizes that to override the presumption of public access a threat cannot be vague or conclusory without evidence of specific fear based on the release of documents.  *Id.* at 3.  The Maine Trust is unimpressed with the report of the Plaintiff's security consultant, which it characterizes as trading in broad generalizations, only amounting to the bromide that "bad things can happen to rich

people." *Id.* The Maine Trust posits that if the Court sealed this case to salve the Plaintiff's concerns, there would be "one law for the rich and another for those of modest means." *Id.*

Similarly, the Maine Trust is skeptical about the Plaintiff's claims of mental and emotional distress as a basis for sealing. *Id.* at 4-5. The Maine Trust observes that all civil litigation is stressful for the parties and that Mr. Doe has presented nothing out of the ordinary. *Id.*

The Maine Trust disputes the Plaintiff's contention that its interest in this case is merely to satisfy the public's "morbid craving" for sensationalism. *Id.* at 5. To the contrary, the Maine Trust replies, this case involves "the award of a $1.35 billion state lottery jackpot, and a lawsuit stemming from that award. This is what newspapers rightly do." *Id.* Moreover, the Maine Times points out that there are "allegations of misconduct within the lawsuit, such as in the motion for sanctions," and these accusations provide "more reasons for public access, not less." *Id.*

Finally, the Maine Trust contends that Mr. Doe's proposals for redaction are far too broad because they are not "narrowly tailored to any legitimate privacy interests." *Id.* at 6. The Maine Trust explains that it is not objecting at this point to redactions as to the identity of the minor daughter and reiterates that it is not objecting right now to the redaction of the parties' names. *Id.* However, the Maine Trust maintains that the parties' "private, family matters" are not categorically subject to redaction. *Id.* Furthermore, the Maine Trust says that the third category, "other legal matters involving the parties" is unjustifiably broad. *Id.* at 6-7. Lastly,

8

the Maine Trust disagrees that the fourth category, "the identify of Plaintiff's agents and business associates," "categorically warrant[s] redaction." *Id.* at 7.

## III.    LEGAL STANDARDS

### A.        The First Amendment Right of Access

The First Circuit has explained that there are "two related but distinct presumptions of public access to judicial proceedings and records: a common-law right of access to 'judicial documents,' and a First Amendment right of access to certain criminal proceedings and materials submitted therein." *United States v. Kravetz*, 706 F.3d 47, 52 (1st Cir. 2013) (quoting *In re Providence Journal*, 293 F.3d 1, 9 (1st Cir. 2002)).  In its description of the First Amendment right of access, the First Circuit was careful to observe that this right of access relates to "certain <u>criminal</u> proceedings and materials submitted therein." *Id.* (emphasis supplied).  In *Courthouse News Service v. Quinlan*, 32 F.4th 15 (1st Cir. 2022), the First Circuit wrote: "[n]either this court nor the Supreme Court has recognized any right under the First Amendment to access documents filed in civil cases." *Id.* at 20.

At the same time, in *Courthouse News*, the First Circuit noted that the "parties agree that there is a qualified First Amendment right in the public to access newly filed complaints." *Id.*  Also in *Courthouse News*, the First Circuit cited *Press-Enterprise Co. v. Superior Court*, 478 U.S. 1, 10-11 (1986) as suggesting that there is such a right and *El Dia, Inc. v. Hernandez Colon*, 963 F.2d 488, 495 (1st Cir. 1992) as suggesting there is not.  The First Circuit then resolved the appeal based on the parties' agreement that the First Amendment applied.  In *El Dia*, the First Circuit

wrote that it "seriously question[ed] whether *Richmond Newspapers* [*Inc. v. Virginia*, 448 U.S. 555 (1980)] and its progeny carry positive implications favoring rights of access outside the criminal justice system." 963 F.2d at 495.

Based on the unsettled state of Supreme Court and First Circuit authority and, unlike in *Courthouse News*, an absence of agreement in this case as to the applicability of the First Amendment to this civil action, the Court follows the prudential practice of the First Circuit of "forgoing broad constitutional holdings unless such holdings are unavoidable." *Sindi v. El-Moslimany*, 896 F.3d 1, 30 (1st Cir. 2018) (citing *Hudson Sav. Bank v. Austin*, 497 F.3d 102, 106 (1st Cir. 2007) and *El Dia*, 963 F.2d at 494). When faced with whether to rest on the First Amendment issue in *Kravetz*, the First Circuit generally declined[1] to reach the constitutional claim and instead resolved the public access issue using the standards in the common law right of access. 706 F.3d at 53. The Court turns therefore to whether the common law right of public access requires the unsealing of the documents filed under seal in this case.

### B.     The Common Law Right of Public Access

The First Circuit extensively discussed the right of public access in *Kravetz* and reiterated that "[c]ourts have long recognized 'that public monitoring of the judicial system fosters the important values of quality, honest and respect for our legal system.'" 706 F.3d at 52 (quoting *In re Providence Journal*, 293 at 9 (quoting

---

[1]     In *Kravetz*, the Court concluded there is no First Amendment right of public access to a Federal Rule of Criminal Procedure 17(c) subpoena. 706 F.3d at 52-54.

*Siedle*, 147 F.3d at 10)). To uphold these values, once it is determined that the document is a so-called "judicial record," a presumption that it is public applies. *Id.*

The First Circuit explained that a "judicial record" is a document that is "submitted by parties to aid in the adjudication of" an issue before the court and that is "meant to impact the court's disposition of substantive rights." *Id.*; *accord United States ex rel. Nargol v. Deputy Orthopaedics, Inc.*, 69 F.4th 1, 15 (1st Cir. 2023) (stating judicial records are "those 'materials on which a court relies in determining the litigants' substantive rights'") (quoting *Kravetz*, 706 F.3d at 54). Thus, in *Kravetz*, a criminal case, the First Circuit decided that there is a right of public access to sentencing memoranda and support letters intended to influence a sentence. *Id.* at 56-59. The *Kravetz* Court rejected the argument that a judicial record need be disclosed only if it actually influenced a judge's decision. *Id.* at 58-59.

At the same time, the *Kravetz* Court observed that "[t]hough the public's right of access is vibrant, it is not unfettered. Important countervailing interests can, in given instances, overwhelm the usual presumption and defeat access." *Id.* at 59 (quoting *Siedle*, 147 F.3d at 10). In other words, while the presumption is very broad, there are exceptional circumstances that may counter it. Therefore, even though a district court must weigh the presumptive right of public access against competing interests, the First Circuit cautioned that "'only the most compelling reasons can justify non-disclosure of judicial records' that come within the scope of the common-law right of access." *Id.* (quoting *In re Providence Journal*, 293 F.3d at 10 (quoting *FTC v. Standard Fin. Mgmt. Corp.*, 830 F.2d 404, 410 (1st Cir. 1987)).

The *Kravetz* Court resolved one issue:  whether there is a right of public access to civil discovery.  There is none.  *Id.* at 55 ("We note that even with respect to civil discovery . . ., there is no right of public access"); *accord Nargol.* 69 F.4th at 15.  The First Circuit quoted the United States Supreme Court in *Seattle Times Co. v. Rhinehart*, 467 U.S. 20 (1984) as stating, "pretrial depositions and interrogatories are not public components of a civil trial.  Such proceedings were not open to the public at common law, and, in general, they are conducted in private as a matter of modern practice."  *Kravetz*, 706 F.3d at 55 (quoting *Seattle Times*, 467 U.S. at 33).  The *Kravetz* Court went on to say that "[c]onsistent with this authority, we also have concluded that no right of access attaches to civil discovery motions themselves or materials filed with them."  *Id.*

In balancing the competing interests in cases where the presumption of public access applies, the district court should consider whether the "personal privacy interests of third parties" are at stake.  *Id.* at 61.  "[P]rivacy rights of participants and third parties are among those interests which, in appropriate cases, can limit the presumptive right of access to judicial records."  *Id.* at 62 (quoting *Standard Fin. Mgmt. Corp.*, 830 F.2d at 411) (quotation marks omitted).  The First Circuit directed district courts to "weigh heavily" the privacy interests of third parties in the court's balancing analysis.

In addition, the First Circuit directed the district courts to "consider the degree to which the subject matter is traditionally considered private rather than public."  *Id.* (quoting *United States v. Connolly (In re Boston Herald, Inc.)*, 321 F.3d 174, 190

(1st Cir. 2003)).  "Financial records of a wholly owned business, family affairs, illnesses, embarrassing conduct with no public ramifications, and similar matters will weigh more heavily against access than conduct affecting a substantial portion of the public."  *Id.* (quoting *United States v. Amodeo*, 71 F.3d 1044, 1051 (2d Cir. 1995)).  Addressing sentencing letters, the First Circuit wrote that "discussion of the ill health of members of the authors' families, incidents of domestic violence, and other domestic relations matters" involves "highly personal" information and "appears to have no direct bearing on the public's assessment of the sentences imposed."  *Id.* at 62.

The *Kravetz* Court also discussed the right of public access to medical information.  *Id.* at 63.  It began with the premise that "[m]edical information is . . . 'universally presumed to be private, not public.'"  *Id.*  Even so, "[a]cknowledging the presumptively private nature of medical information does not end the matter" because "[t]he privacy interest in medical information is 'neither fundamental nor absolute.'"  *Id.* (citation omitted).  In this context, the *Kravetz* Court quoted the Second Circuit in saying that "[c]ourts have long declined to allow public access simply to cater to a morbid craving for that which is sensational and impure."  *Id.* (quoting *Amodeo*, 71 F.3d at 1051).

A special consideration is the fact that the Maine Trust, a member of the press, is seeking unsealing.  Referring to access to public criminal trials, the United States Supreme Court has written,

Instead of acquiring information about trials by firsthand observation or by word of mouth from those who attended, people now acquire it

> chiefly through the print and electronic media. In a sense, this validates the media claim of functioning as surrogates for the public. While media representatives enjoy the same right of access as the public, they often are provided special seating and priority of entry so that they may report what people in attendance have seen and heard. This '[contributes] to public understanding of the rule of law and to comprehension of the functioning of the entire criminal justice system. . ..

*Richmond Newspapers, Inc.*, 448 U.S. 555, 573 (1980) (quoting *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 587 (1976) (Brennan, J. concurring)). These observations about the vital role of the press in monitoring the courts extend beyond criminal law to the civil administration of justice.

## IV.    DISCUSSION

### A.    The Analytic Approach

Consistent with First Circuit precedent, the Court first asks whether the documents subject to this motion are judicial records, that is "materials on which the court relies in determining the litigants' substantive rights." *Id.* at 54. If the documents fall within the definition of judicial records to which the presumptive right of public access applies, the First Circuit directs the district courts to "carefully balance the presumptive right of access against the competing interests that are at stake in a particular case." *Id.* at 59. In doing so, the First Circuit has cautioned that "'only the most compelling reasons can justify non-disclosure of judicial records' that come within the scope of the common-law right of access." *Id.* In its analysis of each document, the Court has reviewed the document with the names of the parties and the minor child redacted to determine what impact the redaction would have on unsealing.

### B.    Matters Not At Issue

Although it reserves the right to do so, the Maine Trust is not now seeking the disclosure of the parties' or their minor child's names. *Reply* at 6 ("[T]he Maine Trust does not object to redacting the identity of the parties' daughter, nor is it at this point moving to oppose pseudonymity"). The Court has not therefore reached the question of whether the adult parties in this case may continue to proceed under pseudonyms. *See Doe v. Mills*, 39 F.4th 20, 26 (1st Cir. 2022) (discussing the Third Circuit multi-factor test to determine whether parties may proceed under pseudonyms).

### C. Newsworthiness

Mr. Doe and the Maine Trust disagree about whether his winning the lottery and filing this lawsuit are newsworthy. Mr. Doe characterizes the Maine Trust's motion to unseal as reflecting its "interest in catering to the public's craving for sensationalism." *Pl.'s Opp'n* at 1. Mr. Doe argues that his and his child's privacy concerns "override the public's 'morbid craving' for sensationalism." *Id.* at 6 (quoting *Amodeo*, 71 F.3d at 1051). The Maine Trust responds that it "seeks to report on a matter of public interest involving governmental processes—the award of a $1.35 billion state lottery jackpot, and a lawsuit stemming from that award. This is what newspapers rightly do." *Reply* at 5.

On this point, the Maine Trust has the better argument. Federal courts are not arbitrators of newsworthiness. That is an editorial, not a judicial decision. In rare cases, even if something may be of interest to the public, such as the names of sexual assault victims or juvenile offenders, the courts restrict dissemination, and many news organizations follow similar self-imposed guidelines. But those

restrictions are grounded on the notion that there is a narrow band of information described in *Kravetz*, where privacy concerns outweigh the right of public access, not that a judge has made an editorial decision about newsworthiness.

### D.    The Balancing Analysis

#### 1.    The Motion to Seal (ECF No. 3)

On November 15, 2023, Mr. Doe filed a motion to seal pursuant to District of Maine Local Rule 157.6(b).[2]  The Court reviewed the motion and sees no basis for it to remain sealed.  The Court ORDERS that the *Rule 157.6(b) Motion for Leave to File Document Under Seal* (ECF No. 3) be UNSEALED thirty days after the issuance of this Order, if not appealed, *see* FED. R. APP. P. 4(a)(1)A), and if appealed, shall remain SEALED until further order of this Court or the Court of Appeals for the First Circuit.

#### 2.    Motion for Leave to Proceed Under Pseudonym and for Protective Order (ECF No. 4)

This motion contains the actual names of Mr. Doe and Ms. Smith.  The Court has reviewed the motion to determine whether if the actual names were redacted, the motion should remain sealed.  The Court concludes that, once redacted, the motion itself contains virtually no specific information that would justify sealing.  The Court therefore ORDERS that the *Motion for Leave to Proceed Under Pseudonym and for Protective Order* (ECF No. 4) be redacted so that the actual names of Mr. Doe and Ms. Smith not be revealed and that, once done, the motion itself be UNSEALED thirty

---

[2]    As Ms. Smith points out, Mr. Doe cites the wrong local rule.  Local Rule 157.6(b) is part of the criminal rules, which are based on different considerations than the civil rules.  *See* D. ME. LOC. R. 157.6.  Sealing documents in civil actions is covered by Local Rule 7A.  D. ME. LOC. R. 7A.  The distinctions between the two rules are not, however, critical to this Court's conclusions.

days after the issuance of this Order, if not appealed, and, if appealed, shall remain SEALED until further order of this Court or the Court of Appeals for the First Circuit.

Mr. Doe attached two documents to the motion: 1) Declaration of Gregory Brown, and 2) Letter from Wesley Brown, Principal of CogentBlue Wealth Advisors dated October 30, 2023. *Id.*, Attach. 1, *Decl. of Gregory Brown*; *id.*, Attach. 2, *Letter from Wesley Brown To Whom It May Concern.* In his Declaration, Attorney Brown discusses the real names and whereabouts of Mr. Doe and Ms. Smith. In her filing dated November 29, 2023, Ms. Smith revealed that she resides in Dracut, Massachusetts. *Def.'s Rule 7.1 Disclosure Statement* (ECF No. 17). This filing was not sealed and remains a matter of public record. The town and state of Mr. Doe's current residence has not been disclosed.

Once the actual names of both Mr. Doe and Ms. Smith and whereabouts of only Mr. Doe are redacted, including the town and state of his current residence, Attorney Brown's sworn declaration contains no specific information that would justify sealing. The Court therefore ORDERS that the *Declaration of Gregory Brown* be redacted so that the actual names of Mr. Doe and Ms. Smith and his town and state of residence not be revealed and that, once done, the declaration itself be UNSEALED thirty days after the issuance of this Order, if not appealed, and, if appealed, shall remain SEALED until further order of this Court or the Court of Appeals for the First Circuit. *Motion for Leave to Proceed Under Pseudonym and for Protective Order*, Attach. 1, *Decl. of Gregory Brown* (ECF No. 4). The October 30, 2023 letter from Wesley Brown has already been redacted so that Mr. Doe's name is not revealed, and, as redacted,

the CogentBlue letter contains no specific information that would justify sealing. The Court ORDERS that the *Wesley Brown To Whom It May Concern Letter* be UNSEALED thirty days after the issuance of this Order, if not appealed, or, if appealed, shall remain SEALED until further order of this Court or the Court of Appeals for the First Circuit.

### 3.    The Non-Disclosure Agreement (ECF No. 7)

On November 14, 2023, Attorney Brown attached the NDA to the original complaint, and it has been sealed. *Compl.*, Attach. 1, *Nondisclosure Agreement*. On November 15, 2023, Attorney Brown filed a revised NDA, which further redacted certain information. *Additional Attachs.* (ECF No. 7). As redacted on November 15, 2023, the Court concludes that the remaining information in the NDA does not justify its sealing. The Court arrives at this conclusion in part from the fact that Mr. Doe has already made public the existence of the NDA and has quoted select provisions from the NDA in the complaint. The Court ORDERS that the NDA at ECF Number 7 be UNSEALED thirty days after the issuance of this Order, if not appealed, or, if appealed, shall remain SEALED until further order of this Court or the Court of Appeals for the First Circuit, and that the NDA attached to the original complaint remain SEALED.

### 4.    The Second Motion to Seal (ECF No. 8)

On November 15, 2023, Mr. Doe filed a second motion to seal pursuant to District of Maine Local Rule 157.6(b). The Court reviewed the motion and sees no basis for it to remain sealed. The Court ORDERS that the *Rule 157.6(b) Motion to*

*Seal Exhibit A to Complaint* (ECF No. 8) be UNSEALED thirty days after the issuance of this Order, if not appealed, or if appealed, shall remain SEALED until further order of this Court or the Court of Appeals for the First Circuit.

### 5.    The Third Motion to Seal and Diversity Disclosure Statement (ECF No. 13)

On November 21, 2023, Mr. Doe filed a third motion to seal pursuant to District of Maine Local Rule 157.6(b).  *Rule 157.6(b) Motion to Seal Diversity Disclosure Statement* (ECF No. 13).  The Court reviewed the motion and sees no basis for it to remain sealed.  The Court ORDERS that the *Rule 157.6(b) Motion to Seal Diversity Disclosure Statement* (ECF No. 13) be UNSEALED thirty days after the issuance of this Order, if not appealed, or if appealed, shall remain SEALED until further order of this Court of the Court of Appeals for the First Circuit.

Mr. Doe attached to the third motion to seal a disclosure of the actual names and addresses of the parties to comply with Federal Rule of Civil Procedure 7.1.  *Rule 157.6(b) Motion to Seal Diversity Disclosure Statement*, Attach. 1, *Diversity Disclosure Statement* (ECF No. 13).   As the unsealing of attachment one, the Diversity Disclosure Statement, would reveal the actual names and street addresses of the parties, the Court ORDERS that it remain SEALED.

### 6.    Defendant's Request for Hearing Re Discovery Dispute Under Local Rule 26(b) (ECF No. 26)

On January 19, 2024, Ms. Smith filed a motion for a hearing regarding a discovery dispute.  *Def.'s Req. for Hr'g Re Disc. Dispute Under Local Rule 26(b)* (ECF No. 26).  In *Kravetz*, the First Circuit "concluded that no right of access attaches to

civil discovery motions themselves or materials filed with them." 607 F.3d at 55. Applying First Circuit law, the Court concludes and ORDERS that the Defendant's request in ECF Number 26 will remain SEALED.

> **7. Plaintiff's Motion to File First Amended Complaint (ECF No. 28); Defendant's Opposition to Motion to File First Amended Complaint Under Seal (ECF No. 48); Plaintiff's Reply to Defendant's Opposition to Motion to File First Amended Complaint Under Seal (ECF No. 52)**

On February 2, 2024, Mr. Doe filed a motion to file an amended complaint and to file it under seal. *Pl.'s Mot. to File First Am. Compl. Under Seal* (ECF No. 28). With the motion, Mr. Doe filed a proposed amended complaint, *id.*, Attach., *First Am. Compl. for Inj. Relief and Damages* (*First Am. Compl.*), and Wesley Brown's October 30, 2023 letter that the Court has already unsealed. *Id.*, Attach. 2, *Wesley Brown To Whom It May Concern Letter.*

The First Amended Complaint alleges that Mr. Doe and Ms. Smith entered into the NDA to protect their daughter and the need to do so was encouraged by recommendations from Mr. Doe's security team. *See First Am. Compl.* ¶¶ 6-18. Next, the First Amended Complaint describes in some detail, the factual grounds for Mr. Doe to have filed this lawsuit. *Id.* ¶¶ 25-40. Therein, Mr. Doe claims that ███████████

████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████. *Id.*

Although the law protects the confidentiality of certain family matters, the Court does not view the allegations in the First Amended Complaint to fall within

the sensitive family matters exception to the presumption of public access.  *See Kravetz*, 706 F.3d at 62 (describing sealed matters may include "discussion of the ill health of members of the authors' families, incidents of domestic violence, and other domestic relations matters" that involve "highly personal" information).

Mr. Doe is alleging that Ms. Smith breached a NDA by telling third parties about his lottery winning.  The first alleged breach of the NDA is that ████████ ██████████████████████████████████████████████████████████████ ████████████████████████████████████████. *Id.* ¶¶ 27-33.  The mere fact that Mr. Doe is alleging that ██████████████████████████████ ████████████████ does not, in the Court's view, rebut the presumption of public access.  Neither does the fact that three of the third parties are ██████████ ██████████████████. The fact that family members, not other third parties, are alleged to have received the information of Mr. Doe's new-found wealth does not, without more, mean that these allegations in the amended complaint should be hidden from the public. *Kravetz*, 706 F.3d at 62.

By contrast, Mr. Doe attached to the amended complaint an affidavit signed by Ms. Smith and filed in Family Court. *First Am. Compl.* at 12-15.  In the affidavit, even as redacted, the following information is revealed: (1) the first name of the daughter, (2) the daughter's grade in school, (3) the daughter's age, (4) the state of Mr. Doe's residence, (5) the details of a ██████████████, (6) allegations about ██ ██████████████████████, and (7) allegations about ██████████████████ ██████████████. *Id.*  In the Court's view, the affidavit contains highly personal

21

family information, largely tangential to whether Ms. Smith breached the NDA, and should remain sealed.  *See Kravetz*, 706 F.3d at 62 (describing sealed matters to include "discussion of the ill health of members of the authors' families, incidents of domestic violence, and other domestic relations matters" that involve "highly personal" information).  The Court considered further extensive redaction of the attached affidavit but concluded that the redactions would have to be so extensive that the revealed portion would be meaningless, and the better course is to keep it sealed.  The Court ORDERS the attachment to the Amended Complaint SEALED.

With his amended complaint, Mr. Doe filed a motion to place not only the amended complaint, but his motion under seal.  Ms. Smith objected, and Mr. Doe replied.  Having reviewed the contents of those filings, the Court is not convinced that they rebut the presumption of public access and the Court ORDERS that Plaintiff's Motion to File First Amended Complaint (ECF No. 28), Defendant's Opposition to Motion to File First Amended Complaint Under Seal (ECF No. 48), and Plaintiff's Reply to Defendant's Opposition to Motion to File First Amended Complaint Under Seal (ECF No. 52) be UNSEALED thirty days after the issuance of this Order, if not appealed, or if appealed, shall remain SEALED until further order of this Court or the Court of Appeals for the First Circuit.

> **8.    Defendant's Motion for Sanctions (ECF No. 31); Plaintiff's Response in Opposition to Defendant's Motion for Sanctions (ECF No. 50); Defendant's Reply in Support of her Motion for Sanctions (ECF No. 56)**

On February 7, 2024, Ms. Smith filed a motion for sanctions against Mr. Doe, claiming that many of the allegations in the proposed First Amended Complaint were false. *Def.'s Mot. for Sanctions* (ECF No. 31). Specifically, Ms. Smith states that it was ███████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████. *Id.* at 2. Moreover, she attaches a sworn declaration from ████████████████ to this effect. *Id.*, Attach. 1, *Decl. of* ██████████████ ███. In the motion, Ms. Smith avers that Mr. Doe's lawsuit is grounded upon false allegations and was filed for an improper purpose, namely ██████████████████████████████████████ ████████████████████████████████████████████████████████████ ██████████████████. *Id.* at 6-7. Ms. Smith seeks dismissal of the lawsuit with prejudice and an order requiring Mr. Doe to pay her attorney's fees. *Id.* at 8.

Although a motion for sanctions can arise during a discovery dispute, this motion does not allege a discovery violation and therefore is not protected from disclosure based on the principle that discovery is not subject to public access. Instead, this motion for sanctions alleges that Mr. Doe initiated the lawsuit for an ulterior and improper purpose, an allegation that is not a matter of discovery and is therefore subject to the normal rules of public access. The Court reviewed the motion and concludes that the presumption of public access applies, and the motion should be unsealed. The Court ORDERS the motion for sanctions UNSEALED thirty days after the issuance of this Order, if not appealed, and if not appealed, shall remain SEALED until further order of this Court or the Court of Appeals for the First Circuit.

Ms. Smith attached to her motion four documents: (1) a sworn declaration from Mr. Doe's ███████, (2) a sworn declaration from Ms. Smith, (3) an email dated January 4, 2024 from Attorney Nuzzi to Attorney Brown, and (4) an affidavit from Attorney Nuzzi.

In the ███████ declaration, all references to the names and residences of individuals have been redacted. *See id.*, Attach. 1, *Decl.* at 1. Based on this Court's review of the ███████ declaration, the Court sees nothing that would rebut the presumption of public access and orders its unsealing.

The sworn declaration from Ms. Smith outlines the events leading up to her signing the NDA, her knowledge of Mr. Doe's revelation of his lottery winnings to others, and some details of a custodial dispute between Ms. Smith and Mr. Doe over their daughter. *See id.*, Attach. 2, *Decl.* at 1. The Court reviewed Ms. Smith's sworn declaration and notes that in addition to the parties' names not being revealed, their child's name is not disclosed, nor is there any detailed information about Mr. Doe, Ms. Smith, or their child that would give a third-party identifying information about them.[3] The Court thus perceives nothing in the document that would rebut the presumption of public access and orders its unsealing.

---

[3]     Although the federal and state standards may differ, courts in Maine routinely issue publicly available opinions about divorce cases where the parties' names are revealed, discussing sensitive family matters, and often describing detailed financial information. *See Ewing-Wegmann v. Allerding*, 2023 ME 47, ¶¶ 6-7, 299 A.3d 609 (discussing allegations of inappropriate touching of a child by the father); *Sears v. Sears*, 2023 ME 45, ¶¶ 2-9, 299 A.3d 15 (describing detailed financial information about divorcing couple). Maine courts do not reveal the names of a minor child. *See Ewing-Wegmann*, 2023 ME 47, ¶¶ 4-9. Here, at this point, the parties' and the child's names are protected and the revelation of the details of the disputes between the parties would be no greater than in the courts of Maine in a divorce proceeding.

The email dated January 4, 2024 from Attorney Nuzzi to Attorney Brown contains no information that should not be revealed to the public, and the Court orders its unsealing. *See id.*, Attach. 3, *Email* at 1.

The declaration of Attorney Nuzzi provides some background behind Ms. Smith's decision to file a motion for sanctions, including a prior demand that ███

███████████████████. *See id.*, Attach. 4, *Decl. of Daniel A. Nuzzi* at 1. The Court sees nothing in the affidavit that would countermand the presumption of public access. The Court ORDERS all four attachments to the motion for sanctions UNSEALED thirty days after the issuance of this Order, if not appealed, or if appealed, shall remain SEALED until further order of this Court or the Court of Appeals.

Finally, the Court reviewed the contents of Mr. Doe's response to Ms. Smith's motion for sanctions and Ms. Smith's reply and concludes that the presumption of public access requires that these memoranda be unsealed. The Court ORDERS that Plaintiff's Response in Opposition to Defendant's Motion for Sanctions (ECF No. 50) and Defendant's Reply in Support of her Motion for Sanctions (ECF No. 56) be UNSEALED thirty days after the issuance of this Order, if not appealed, or if appealed, shall remain SEALED until further order of this Court or the Court of Appeals.

      **9.**      **Plaintiff's Rule 157.6(b) Motion to Seal Defendant's Motion for Sanctions (ECF No. 34); Defendant's Opposition to Motion to Seal (ECF No. 36); Plaintiff's Reply to Defendant's Opposition to Motion to Seal (ECF No. 37)**

On February 7, 2024, Mr. Doe filed an emergency motion to seal Ms. Smith's motion for sanctions. *Pl.'s Rule 157.6(b) Mot. to Seal Def.'s Mot. for Sanctions* (ECF No. 34) (*Pl.'s Sealing Mot.*). On February 7, 2024, the Court granted the emergency motion to seal with a line order. *Order* (ECF No. 35).[4] On February 8, 2024, Ms. Smith opposed the motion to seal. *Def.'s Opp'n to Mot. to Seal* (ECF No. 36) (*Def.'s Sealing Opp'n*). On February 15, 2024, Mr. Doe filed a reply. *Pl.'s Reply to Def.'s Opp'n to Mot. to Seal* (ECF No. 37) (*Pl.'s Sealing Reply*).

The basis of Mr. Doe's motion to seal is that the information in the motion for sanctions is sufficient to allow the media and general public to connect the ██████████ family court case to Mr. Doe and to identify him, Ms. Smith, and their daughter. *Pl.'s Sealing Mot.* at 1-2. Mr. Doe goes on to say that "[f]amily court counsel for the parties have jointly moved to impound the ██████████ family court filings, but the motion to impound is still pending and has not been acted upon by the ██████████ family court." *Id.* at 2. Ms. Smith opposed the sealing based on the principles of public access the Court has outlined above. *Def.'s Sealing Opp'n* at 1-6. Ms. Smith emphasizes that much about the facts in this case are already in the public domain and that Mr. Doe's complaint, which is not sealed, already reveals substantial information about the underlying facts *Id.* In his reply, Mr. Doe says that Ms. Smith filed the Rule 11 motion without seal for improper purposes, to win in the court of

---

[4]     Unless it is absolutely certain that a motion to seal is non-meritorious, a court will typically initially grant the motion subject to further briefing and ruling. The Court did so in this instance, not addressing the merits of the motion to seal, but because if the Court denied the motion, the information would be made public, thereby effectively reaching the merits of the motion moot.

public opinion and to identify Mr. Doe and their minor daughter to the media and the general public. *Pl.'s Reply* at 1-2.

As the Court has determined that the Rule 11 motion should not be sealed, the Court also concludes that the arguments about whether it should be sealed are also subject to public access. *See Kravetz*, 706 F.3d at 52; *Nargol*, 69 F.4th at 15. Furthermore, to the extent Mr. Doe is concerned that the contents of the Family Court docket are accessible to the public, his relief should be with the Family Court, not this Court, and in fact, he has already moved the Family Court to seal that docket. There is no indication whether the Family Court judge has ruled on the motion to seal its docket, but the decision whether to do so should rest with that judge.

The Court ORDERS that Plaintiff's Rule 157.6(b) Motion to Seal Defendant's Mot. for Sanctions (ECF No. 34), Defendant's Opposition to Motion to Seal (ECF No. 36), and Plaintiff's Reply to Defendant's Opposition to Motion to Seal (ECF No. 37) be UNSEALED thirty days after the issuance of this Order, if not appealed, or, if appealed, shall remain SEALED until further order of this Court or the Court of Appeals for the First Circuit.

> **10. Transcript of February 6, 2024 Discovery Conference (ECF No. 39); Plaintiff's Motion for Redaction (ECF No. 41); Defendant's Partial Opposition to Plaintiff's Motion for Redaction (ECF No. 49); Plaintiff's Reply to Defendant's Partial Opposition to Plaintiff's Motion for Redaction (ECF No. 51)**

On February 16, 2024, the Clerk of Courts docketed a transcript of a February 6, 2024 discovery conference before Magistrate Judge Karen Wolf. *Tr. of Proceedings*,

27

*Disc. Hr'g* (ECF No. 39).  The Court placed this transcript under seal.  *Id.*  On February 28, 2024, Ms. Smith filed a partial opposition to the motion for redaction. *Def.'s Partial Opp'n to Pl.'s Mot. for Redactions* (ECF No. 49).  On February 29, 2024, Mr. Doe replied.  *Pl.'s Reply to Def.'s Partial Opp'n to Pl.'s Mot. for Redactions* (ECF No. 51).

The Court does not address the merits of these motions because the present issue before the Court is whether the public has a right of access to docketed matters in this case, and, for the reasons the Court explained, there is no right of public access to discovery in a civil action in the First Circuit.  Therefore, there is no right of public access to a hearing addressing discovery matters.  Finally, there is no right of public access to arguments about redactions to a sealed transcript.  The Court ORDERS that the transcript (ECF No. 39), the motion for redaction (ECF No. 41), the partial opposition (ECF No. 49), and the reply (ECF No. 51) remain SEALED.

## V.   OBSERVATIONS

In this order, the Court discussed the sealing of docket entries in this case and has not reached the question of the use of pseudonyms, especially if the case proceeds to trial.  In 2022 and 2023, the First Circuit addressed the use of pseudonyms in litigation in three cases: *Doe v. Town of Lisbon*, 78 F.4th 38 (1st Cir. 2023); *Doe v. Mass. Inst. of Tech.*, 46 F.4th 61 (1st Cir. 2022); and *Doe v. Mills*, 39 F.4th 20 (1st Cir. 2022).  As the caselaw has repeatedly shown, even when pseudonyms are allowed during the discovery phase in the run-up to trial, there is no guarantee that the Court will sanction their use if the case goes to trial.  *See, e.g., Tourangeau v. Nappi*

*Distribs.*, No. 2:20-cv-00012-JAW, 2023 U.S. Dist. LEXIS 29369 (D. Me. Feb. 22, 2023) (rejecting a request to use pseudonyms generally at trial but allowing their use for publicly available exhibits); *see also Doe v. Mass. Inst. of Tech.*, 46 F.4th at 73 ("[A]n order granting pseudonymity should be periodically reevaluated if and when circumstances change").

In 2022, the First Circuit joined its sister circuits in ruling that a district court order denying a motion to proceed by pseudonym is immediately appealable under the collateral order doctrine. *Doe v. Mass. Inst. of Tech.*, 46 F.4th 61, 66-67 (1st Cir. 2022). If the *Doe* holding extends beyond pseudonyms to docket entries, Mr. Doe would have a right to appeal this order and the Maine Trust might have a right to appeal the aspects of this Order unfavorable to it. To preserve what may be rights of interlocutory appeal, the Court is staying this Order to the extent it unseals currently sealed docket entries, and the Court redacts information from the Order that Mr. Doe contends should remain sealed. If Mr. Doe does not appeal, the sealed docket entries and the redactions in this Order will be unsealed and unredacted. If Mr. Doe appeals, the stay will remain effective pending further order.

The second question is the length of time this Order should remain redacted, and the docket entries sealed. As a precaution, the Court concludes that the sealed docket entries and redactions should last the thirty-day period for appeal under Federal Rule of Civil Procedure 4(a).

To address a further point, with any contested sealing order, where the party seeking the unsealing does not know the contents of the sealed matters, a court

cannot publicly reveal the sealed information until the resolution of the appeal. A publicly revealed secret is no longer a secret. So, in redacting this Order and in continuing to seal the sealed docket entries, the Court acceded to Mr. Doe's more expansive view of what should be sealed, even though in this Order, the Court declined to accept Mr. Doe's view. The Court's redactions do not reflect the Court's opinion, only the Court's effort to preserve Mr. Doe's right to appeal its opinion.

In doing so, the Court is aware that the Maine Trust has a right to know the basis of its ruling so that it may effectively argue the appeal, if there is one. The Court reviewed the Order with a view toward whether it contains enough information to allow the Maine Trust to understand its bases and present its arguments on appeal. Even though the Maine Trust does not know the contents of the sealed and redacted information, there should be enough information about the Court's reasoning and order to allow its participation in any appeal.

Finally, the Court's redactions and sealing orders do not apply to the immediate parties, Mr. Doe and Ms. Smith, since they already have access to the redacted and sealed information. The Court orders that an unredacted version of this Order be made available to Mr. Doe and Ms. Smith only.

## VI.    CONCLUSION

The Court GRANTS in part and DENIES in part the Maine Trust for Local News, L3C d/b/a Portland Press Herald/Maine Sunday Telegram's Motion to Unseal by Intervenor Maine Trust for Local News (EFC No. 43).

The Court ORDERS that a redacted version of this Order be publicly docketed and that only Plaintiff John Doe and Defendant Sarah Smith be given immediate access to an unredacted version of the Order.  If this Order is appealed, this redacted Order will remain effective pending appeal; however, if this Order is not appealed, the Court ORDERS that an unredacted version of this Order be publicly docketed in thirty days.

The Court further ORDERS that its Order unsealing docket entries is STAYED for a period of thirty days.  If the Order is appealed, the order unsealing docket entries will remain STAYED pending appeal and, if the Order is not appealed, the Court ORDERS that the currently sealed docket entries to be unsealed under this Order, be unsealed and made publicly accessible in thirty days.

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 8th day of May, 2024

31