UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| JOHN DOE,<br><br>Plaintiff,<br><br>v.<br><br>SARA SMITH,<br><br>Defendant,<br><br>MAINE TRUST FOR LOCAL NEWS, L3C,<br><br>Intervenor. | ) | No. 2:23-cv-00423-JAW |

**ORDER ON MOTION TO AMEND COMPLAINT**

The Court concurs with the Magistrate Judge that the Plaintiff's motion to amend complaint to assert a claim that the co-parent of their child violated a non-disclosure agreement by revealing his financial windfall to her attorney is futile because the non-disclosure agreement violates public policy and is unenforceable.

## I. BACKGROUND

On November 14, 2023, John Doe, a pseudonym for the father of a minor daughter, filed a lawsuit in this Court against Sara Smith, a pseudonym for the mother of the same minor daughter, seeking an injunction and other relief against Ms. Smith for disclosure of information subject to a Non-Disclosure Agreement (NDA) between them. *Compl.* (ECF No. 1). Specifically, Mr. Doe, the winner of a billion-dollar lottery prize, claimed that Ms. Smith violated the NDA by informing third parties about his winnings. *Id.*

On February 2, 2024, Mr. Doe filed a motion to amend his complaint in which he "(1) details and clarifies the relationship between the parties and the unique safety and security reasons behind the signing of their [NDA]; (2) documents the telephone voicemail from Plaintiff's father to Defendant which forms the basis for Plaintiff's claim the Defendant breached the terms of the NDA in her communications with Plaintiff's father and stepmother; and (3) introduces new facts to support the additional allegation that Defendant breached the terms of the NDA by directly or indirectly disclosing Protected Subject Matter to her family court attorney and the public, without Plaintiff's permission." *Pl.'s Mot. to File First Am. Compl. Under Seal* at 2-3 (ECF No. 28) (*Pl.'s Mot.*). On February 23, 2024, Ms. Smith opposed the motion to amend complaint on the grounds, among others, that the amendment was "futile, brought in bad faith, and based on undue delay" and that at least one of the allegations in the amended complaint is "false." *Def.'s Opp'n to Mot. to File First Am. Compl. Under Seal* at 3 (ECF No. 48) (*Def.'s Opp'n*). Mr. Doe filed a reply on March 4, 2024, rejecting Ms. Smith's contentions. *Pl.'s Reply to Def.'s Opp'n to Mot. to File First Am. Compl. Under Seal* (ECF No. 52) (*Pl.'s Reply*).

On May 21, 2024, the Magistrate Judge issued an order on the motion to amend. *Order on Mot. to Am.* (ECF No. 81) (*MJ Order*). In her order, the Magistrate Judge focused on whether Mr. Doe's proposed amendment was "unenforceable as against public policy." *Id.* at 1-3. Citing Maine and other caselaw, the Magistrate Judge had "no trouble concluding that the NDA is unenforceable to the extent it

would interfere with Smith's ability to consult with her attorney and make custody-related court filings." *Id.* at 2-3. She thus denied the motion to amend. *Id.* at 3.

On June 4, 2024, Mr. Doe objected to the Magistrate Judge's order. *Pl.'s Obj. to Magistrate Judge's Order on Mot. to Am.* (ECF No. 85) (*Pl.'s Obj.*). On June 14, 2024, Ms. Smith filed her response to Mr. Doe's objection. *Def.'s Resp. to Pl.'s Obj. to Magistrate's Order on Mot. to Am.* (ECF No. 96) (*Def.'s Obj. Opp'n*). On June 27, 2024, Mr. Smith filed his reply. *Pl.'s Reply in Support of Obj. to Magistrate's Order on Mot. to Am.* (ECF No. 112) (*Pl.'s Obj. Reply*).

On June 27, 2024, this Court struck Mr. Doe's reply for failure to comply with District of Maine Local Rule 72.1(a). *Order* (ECF No. 113). The same day, Mr. Doe filed a motion for permission to file the reply memorandum. *Pl.'s Mot. to File Reply Mem. to Def.'s Resp. to Pl.'s Obj. to Magistrate's Order on Mot. to Am.* (ECF No. 114). On June 27, 2024, Ms. Smith filed her response. *Def.'s Obj. to Pl.'s Mot. to File Reply* (ECF No. 115). Mr. Doe elected not to file a reply. On July 12, 2024, the Court granted Mr. Doe's motion to file a reply, ruling that the Court would consider Mr. Doe's reply. *Order on Mot. to File Reply* (ECF No. 116).

With the dispute over Mr. Doe's reply resolved, his objection to the Magistrate Judge's May 21, 2024 order is now in order for decision.

## II. THE MOTION TO AMEND AND RECOMMENDED DECISION

### A. John Doe's Motion

Mr. Doe moved to amend his complaint in order to "(1) detail[] and clarif[y] the relationship between the parties and the unique safety and security reasons behind

the signing of their [NDA]; (2) document[] the telephone voicemail from Plaintiff's father to Defendant which forms the basis for Plaintiff's claim the Defendant breached the terms of the NDA in her communications with Plaintiff's father and stepmother; and (3) introduce[] new facts to support the additional allegation that Defendant breached the terms of the NDA by directly or indirectly disclosing Protected Subject Matter to her family court attorney and the public, without Plaintiff's permission." *Pl.'s Mot.* at 2-3. Mr. Doe observed that the motion was timely and he urged the Court to grant the amendment since "leave to amend should be freely granted as justice requires." *Id.* at 3.

**B. Sara Smith's Objection**

Ms. Smith opposed the motion to amend complaint on the grounds, among others, that the amendment was "futile, brought in bad faith, and based on undue delay" and that at least one of the allegations in the amended complaint is "false." *Def.'s Opp'n* at 3. Pointing to an affidavit from Mr. Doe's father, Ms. Smith argued that the motion to amend should not be granted because the underpinnings "are false, and the complaint is being brought for the improper purpose of harassing and bullying the Defendant to extract concessions in their underlying custody and child support case." *Id.* at 6. Ms. Smith maintained that the NDA provision that required prior notice to Mr. Doe before consulting with her attorney is void because it violates public policy. *Id.* at 8-9. Finally, Ms. Smith asserted that the Court should not grant the motion because Mr. Doe unduly delayed its filing. *Id.* at 9.

### C. John Doe's Reply

Mr. Doe first responds that his amended allegations about the disclosures are not limited solely to what was supposedly said to his father and stepmother. *Pl.'s Reply* at 2-3. Mr. Doe also challenged the assertion that the attorney-notice provision of the NDA is against public policy. *Id.* at 4-5. Mr. Doe pointed out that the NDA did not restrict Ms. Smith from communicating protected information to her attorneys; it only required her to give prior notice to him before doing so. *Id.* at 4. Furthermore, Mr. Doe strongly objected to Ms. Smith's characterization of this provision of the NDA as giving a kidnapper the keys to the courthouse. *Id.* at 4-5. He says she would not be prohibited from revealing this type of information from her attorney, and he maintains that in any event the family attorneys for both sides were communicating at that time. *Id.* Finally, Mr. Doe disputes Ms. Smith's claim that he unduly delayed amending the complaint, noting that the allegations concern things that happened after he initially filed the complaint. *Id.* at 5-6.

### D. The Recommended Decision

In her recommended decision, the Magistrate Judge denied Mr. Doe's motion to amend complaint on public policy grounds. *MJ Order* at 1-3. After reviewing Maine and other caselaw, the Magistrate Judge concluded that the NDA's restrictions against Ms. Smith contacting her attorney without prior notice, especially in a child custody context, would violate public policy. *Id.* Indeed, the Magistrate Judge had "no trouble concluding that the NDA is unenforceable to the extent it would interfere

with Smith's ability to consult with her attorney and make custody-related court filings." *Id.* at 2.

### E. John Doe's Objection

In Mr. Doe's objection, he urged the Court to recharacterize the Magistrate Judge's order as a recommended decision and apply a de novo standard of review since the Magistrate Judge's order is dipositive of the claim in his proposed amended complaint. *Pl.'s Obj.* at 3. Mr. Doe maintains that the Magistrate Judge erred because the NDA, in his view, does not prohibit Ms. Smith from contacting her attorney; it only requires "'reasonable advance notice' to Plaintiff or his representatives" of the contact, if Ms. Smith is going to reveal to her attorney matters protected by the NDA. *Id.* at 4-5. Mr. Doe argues that the sole purpose of the prior notice provision is to protect his "identity and privacy." *Id.* at 5. Mr. Doe contends that the Magistrate Judge erred in finding that the NDA required Ms. Smith to seek "permission" to consult an attorney, when in fact, he says, the NDA only requires prior notice. *Id. a*t 5-6.

Mr. Doe observes that Ms. Smith could have consulted with her attorneys without triggering the NDA so long as she did not reveal "the confidential identities of Plaintiff's security team and financial advisor and the confidential fact that Plaintiff won a significant amount of money in the lottery." *Id.* at 6. Mr. Doe criticizes the Magistrate Judge's determination that the NDA would have affected what Ms. Smith could tell her attorneys. *Id.*

Mr. Doe reviews the public policy caselaw cited by the Magistrate Judge and argues that it is "inapposite." *Id.* at 7-8. Instead, Mr. Doe focuses on the principles of Maine law that discourage courts from invalidating contracts on public policy grounds. *Id.* at 8.

**F. Sara Smith's Response**

First, Ms. Smith says that the Magistrate Judge correctly interpreted the NDA to require both permission and notice before mentioning protected information to her attorneys. *Def.'s Obj. Opp'n* at 2-3. Ms. Smith quotes language in Mr. Doe's proposed amended complaint asserting that Ms. Smith needed to obtain Mr. Doe's "permission" to inform her attorneys about protected information, and she argues that Mr. Doe is "running from the proposed amended complaint's language." *Id.* at 4. Furthermore, Ms. Smith says that "[e]ither way"—whether the NDA requires prior notice or prior permission—the Magistrate Judge correctly ruled that it is void as against public policy. *Id.*

Moreover, Ms. Smith argues, the NDA itself allows for communication with attorneys since an attorney is an "Authorized Recipient" allowed to receive "confidential information" "as required for their professional services." *Id.* at 5. These provisions, Ms. Smith contends, remove attorneys from the prior notice or permission provision. *Id.* Instead, Ms. Smith maintains that the prior notice or permission provision applies only to compelled disclosures to a third party under the law, such as responding to a subpoena. *Id.* at 6.

Regarding whether this Court should treat the Magistrate Judge's order as an order on a dispositive matter, Ms. Smith points out that the Magistrate Judge's order did not dispose of the breach of contract claim, just one way in which Mr. Doe wishes to proceed with the claim. *Id.* at 7-9. Accordingly, Ms. Smith urges the Court to review Mr. Doe's objection under the "clearly erroneous or contrary to law" standard in Federal Rule of Civil Procedure 72(a). *Id.* Finally, to the extent Mr. Doe has long been aware of the facts underlying the proposed amended complaint, he is guilty, in Ms. Smith's view, of unnecessary delay. *Id.*

**G. John Doe's Reply**

In his reply, Mr. Doe turns first to the construction of the NDA proposed by Ms. Smith in her response. *Pl.'s Obj. Reply* at 1-3. Mr. Doe argues that Ms. Smith's interpretation conflates the "covenant" with the "disclosure" parts of the NDA. *Id.* Citing provisions of the NDA, he says that attorneys are included as authorized recipients of confidential information in the covenant section, but disclosure to attorneys is restricted in the disclosure part of the NDA. *Id.*

Mr. Doe rejects Ms. Smith's accusation that he is running away from the allegations in his proposed amended complaint. *Id.* at 3. He stresses that the proposed complaint only clarifies that Ms. Smith was not required to notify him personally but could have notified his representatives. *Id.*

Mr. Doe reengages in the controversies about Ms. Smith's allegations about the alleged kidnapping of their daughter. *Id.* at 3-4. He disputes Ms. Smith's charge that he unduly delayed moving to amend his complaint. *Id.* at 4. Finally, he argues

that the de novo standard of review should be applied because the proposed complaint differentiated between breaches of the NDA caused by communication with Ms. Smith's attorneys and with other third parties. *Id.* at 5.

## III. DISCUSSION

The parties vigorously dispute whether the Court should review the Magistrate Judge's order under the de novo standard for a dispositive matter in Federal Rule of Civil Procedure 72(b) or the more deferential clearly erroneous standard for a non-dispositive matter in Federal Rule of Civil Procedure 72(a). *See Sargent v. NorDx*, 2:20-cv-00467-JAW, 2022 U.S. Dist. LEXIS 226506, at *8-12 (D. Me. Dec. 16, 2022). However, the Court declines to engage in this controversy because the result is the same under either standard of review. *See MacDonald v. York Cnty. Sheriff*, No. 2:22-cv-00302-JAW, 2024 U.S. Dist. LEXIS 81778, at *5, n.1 (D. Me. May 6, 2024). Nor does the Court find it necessary to resolve the parties' conflicting interpretations of the NDA or to engage in the debate about whether Mr. Doe unduly delayed the filing of his motion to amend the complaint. Even assuming Mr. Doe is correct on both issues, the decisive question is whether the prior notice or permission clause in the NDA violates public policy.

Consistent with the Magistrate Judge's ruling, the Court concludes that an NDA that requires one party to provide prior notice or request permission for that party to discuss confidential matters with his or her attorney violates public policy and is unenforceable. The Court fully adopts the Magistrate Judge's excellent analysis of this issue and adds a few points.

First, the contractual obligation to inform another person that a party is consulting an attorney and intends to discuss specific information with an attorney is itself a breach of the attorney-client privilege. Particularly, as here, where the context is a child custody dispute, if an opposing parent learns not only when the other parent is seeking legal advice, but also, in part, what the other parent intends to discuss with her attorney, he has gained information protected from disclosure by the attorney-client privilege. To know the "who, when, and what" of an attorney-client relationship could provide the opposing parent with an unfair strategic advantage in a child custody dispute. "The purpose of the attorney-client privilege is 'to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice.'" *In re Grand Jury Proceedings*, 802 F.3d 57, 65 (1st Cir. 2015) (quoting *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981)).

Second, even though a client may waive the attorney-client privilege, *see Neece v. City of Chicopee*, No. 23-1227, 2024 U.S. App. LEXIS 15690, at *30 (1st Cir. June 24, 2024), as the Magistrate Judge explained, the contractual constraints imposed by the NDA "expose the child and the parties to the risk that the terms of the agreement, rather than the court's understanding of the child's best interest, will determine the outcome of issues, such as custody, that require an analysis of the best interest of the child." *MJ Order* at 3 (quoting *Riemann v. Toland*, 2022 ME 13, ¶ 40, 269 A.3d 229); *see* 19-A M.R.S. § 1653(3) (establishing "the best interest of the child" as the overriding legal standard in making an award of parental rights and responsibilities).

Third, in the context of Mr. Doe's and Ms. Smith's custody dispute, it would be manifestly relevant for Ms. Smith's counsel to know a wide range of details about Mr. Doe, including the fact that he had suddenly come into a fortune. This information would be relevant to a host of issues regarding custody and the determination of parental rights and responsibilities. *See* 19-A M.R.S. § 1653 (listing numerous factors to be considered when determining parental rights and responsibilities).

Fourth, if Mr. Doe were suspicious that Ms. Smith violated the NDA by revealing protected information, there are problematic issues of discovery and proof. To demand in discovery or at trial that Ms. Smith reveal what she told her attorney would violate the attorney-client privilege. Even if the attorney-client privilege were waived by the NDA, for Mr. Doe to question Ms. Smith about her conversation would test the unclear lines between waived and confidential communications. If Ms. Smith denied Mr. Doe's allegation, the alternative would be to depose Ms. Smith's attorney about the attorney's conversations with Ms. Smith, an obviously fraught procedure.

Finally, Mr. Doe insists on a procedure sanctioned by the NDA, dictating that what would otherwise be privileged communication be revealed to him. However, there are obvious, less fraught alternatives. If Ms. Smith were required to simply notify Mr. Doe of the fact that she has retained a particular attorney, the NDA could have assumed that Ms. Smith had a right to explain Mr. Doe's sudden financial windfall and could have placed the onus on Mr. Doe's counsel to provide her attorney with information about or a copy of the NDA. Whether Ms. Smith could be required to disclose her attorney's name to Mr. Doe is not before the Court, but it would be

much less invasive of the attorney-client relationship than the current provisions of the NDA. Instead, the NDA intrudes upon the conversations between Ms. Smith and her lawyer. Even if Mr. Doe had a legitimate concern that Ms. Smith might inform her lawyers about protected subject matter concerning Mr. Doe and not inform them that the information was protected by the NDA, thus risking public exposure of the protected information in a court filing or otherwise, the means by which the NDA elected to ameliorate this potential issue invaded Ms. Smith's privileged communications with her attorney, when other less problematic means of minimizing the risk were available.

In short, for the reasons well explained by the Magistrate Judge and further described here, the Court agrees with the Magistrate Judge that the NDA's provisions on prior notice or permission before Ms. Smith could consult with her attorney in a child custody dispute violate public policy and are unenforceable. Therefore, the Court affirms the Magistrate Judge's order denying Mr. Doe's motion to amend his complaint.

## IV. CONCLUSION

The Court OVERRULES Plaintiff's Objection to Magistrate Judge's Order on Motion to Amend (ECF No. 85), AFFIRMS the Magistrate Judge's Order on Motion to Amend (ECF No. 81), and DENIES the Plaintiff's Motion to File First Amended Complaint Under Seal (ECF No. 28). The Court ORDERS that this Order remain sealed until the parties and the Court have received and reviewed the Court of

Appeals for the First Circuit's resolution of the pending appeal of this Court's earlier sealing order.

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 19th day of July, 2024