UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

| | | |
|---|---|---|
| JOHN DOE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 2:23-cv-00423-JAW |
| | ) | |
| SARA SMITH, | ) | |
| | ) | |
| Defendant. | ) | |

## PLAINTIFF'S MOTION FOR CLOSURE OF TRIAL

The sole purpose of Plaintiff's lawsuit is to address and remedy Defendant's breach of their NDA, and to restore and preserve his and his minor child's safety and privacy. The Court "hit the nail on the head" when it observed during the Parties' January 10, 2025 status conference that Plaintiff would be faced with a "Catch-22" if this case were to proceed to a public trial. That is, even if Plaintiff were to win on his claims, his identity and confidential information would be revealed to the public and the media; he would effectively lose the privacy war and subject himself and his minor daughter to the irreparable harm he brought suit to avoid. The Court reasoned, therefore, that the issue of a public trial is congruent with the merits of this case, and that a practical way to resolve the issue would be for the Parties to brief it and obtain a ruling that would allow for an interlocutory appeal in advance of trial.[1] (*See* ECF No. 176).

Accordingly, Plaintiff respectfully submits this Motion for Closure of Trial. Although civil trials have been presumptively open, the public and media do not have a constitutional right

---

[1] Relatedly, the issue of whether Plaintiff should be required to disclose in discovery additional confidential information to a breaching Defendant is congruent with the public trial issue, and one that may lend itself to consolidation as part of an interlocutory appeal.

1

to attend, and the presumption may be overcome under the proper circumstances. Plaintiff's case is one in which the countervailing factors defeat any presumption of public access. A public trial would subvert the entire purpose of this litigation—to protect confidential information and those who would be irreparably harmed by its disclosure—and send a message to similarly situated litigants that they should think twice about accessing the court system, even where, as here, they hold valid claims.

For the reasons that follow, Plaintiff respectfully requests that any trial in this matter be closed in its entirety to the public and media or, as a last alternative, that all testimony of the Parties and any of their family members to be submitted to the jury be taken by telephone or Zoom (audio only) during any trial with appropriate safeguards, including, but not limited to, the partial closure of any trial to the public and media where appropriate, in order to ensure that the identities and other personal identifying information of the Parties and their family members remain anonymous.

## ARGUMENT

**I.  Any Trial In This Matter Should Be Closed In Its Entirety To The Public And Media.**

**A.  The State of the Law**

At issue is whether there is a First Amendment and/or a common law right of public access to any jury trial in this civil matter. Neither the Supreme Court nor the First Circuit has yet recognized a First Amendment right of access to civil trial proceedings. *See, e.g.*, *U.S. v. Kravetz*, 706 F.3d 47, 52 (1st Cir. 2013) (carefully observing that "a First Amendment right of access [pertains] to certain *criminal* proceedings and materials submitted therein" (emphasis added)). In fact, the First Circuit has previously suggested that there is no such right: "In the first place, we seriously question whether *Richmond Newspapers* [*v. Virginia*, 448 U.S. 555 (1980)]

and its progeny carry positive implications favoring rights of access outside the criminal justice system." *El Dia, Inc. v. Hernandez Colon*, 963 F.2d 488, 495 (1st Cir. 1992).[2] Since *El Dia*, the First Circuit has declined to expand further on whether any such right of public access exists to civil trials. *See U.S. v. Three Juveniles*, 61 F.3d 86, 88 n.2 (1st Cir. 1995).

Were this Court to engage in a First Amendment analysis, there is a two-step inquiry. First, the Court would apply the "experience and logic test" to assess whether a First Amendment right of access attaches to any jury trial in this civil matter. *Press-Enterprise Co. v. Super. Ct. of Cal. for Riverside Cnty.*, 478 U.S. 1, 8-9 (1986) ("*Press Enterprise II*"). If the answer to that inquiry is yes, the Court would then assess whether closure of the trial would pass strict scrutiny. *Courthouse News Serv. v. Quinlan*, 32 F.4th 15, 20 (1st Cir. 2022) (where the First Amendment attaches, strict scrutiny applies to closing public access to judicial proceedings).

Under the "judgment of experience" prong, the Court would assess whether civil jury trials of this type have historically been open to the press and the public, "'because a tradition of accessibility implies the favorable judgment of experience.'" *U.S. v. Connolly* (*In re Boston Herald, Inc.*), 321 F.3d 174, 182 (1st Cir. 2003) (quoting *Press Enterprise II,* 478 U.S. at 8). Under the "logic" prong, the Court would assess "whether public access plays a significant positive role in the functioning of the particular process in question." *Id.* (quoting *Press Enterprise II*, 478 U.S. at 8).

To the extent there is a common law right of public access to civil jury trials of this type, that access is not unfettered. *Kravetz*, 706 F.3d at 59. In the context of "judicial records," the First Circuit has explained: "Important countervailing interests can, in given instances, overwhelm the usual presumption and defeat access." *Id.* (internal quotation marks omitted).

---

[2] Other Circuit Courts of Appeals have found a First Amendment right of access to at least some civil documents and proceedings. *See Courthouse News Serv. v. Quinlan*, 32 F.4th 15, 20 n.8 (1st Cir. 2022) (collecting cases).

3

The Court "must carefully balance the presumptive public right of access against the competing interests that are at stake in a particular case, keeping in mind that only the most compelling reasons can justify" nonaccess. *Id.* (internal citations and quotation marks omitted). Significantly, "[p]rivacy rights of participants and third parties are among those interests which, in appropriate cases, can limit the presumptive right of access to judicial records [here, proceedings]." *Id.* at 62 (internal quotation marks omitted). Thus, "courts should consider the degree to which the subject matter is traditionally considered private rather than public." *Id.* (internal quotation marks omitted). "Financial records of a wholly owned business, family affairs, illnesses, embarrassing conduct with no public ramifications, and similar matters will weigh more heavily against access than conduct affecting a substantial portion of the public." *Id.* (internal quotation marks omitted).

As set forth below, under either the First Amendment or the common law standards, the Court should close to the public and media any jury trial in this case.

**B.    Application**

No First Amendment right of public access attaches to any jury trial in this civil matter. Assuming *arguendo* that there is a history of public access to some civil jury trials, such as where constitutional rights are being litigated, turning to the "logic" prong of the Supreme Court's "experience and logic" test, public access would not play a significant positive role in the functioning of civil jury trials such as this one. To the contrary, it would play a significant detrimental role.

First, this whole case is about preserving Plaintiff's confidential information, including his identity. As this Court foresaw, if the public and media are allowed to attend any trial, Plaintiff's and other witnesses' *mere appearances* at the trial would in and of themselves reveal

4

Plaintiff's identity, thereby vitiating the whole purpose of the litigation and undermining any positive role of public access.

Courts have held that such exacerbation of injury can warrant closure of trial proceedings. For example, in *Standard & Poor's Corp. v. Commodity Exchange, Inc.*, the Court reasoned that refusing to close trial testimony concerning the trade secrets at issue in that case would have put the plaintiff in the position of either not suing or having to disclose:

> To have refused to close the proceedings during the testimony concerning the trade secrets would have, to paraphrase the *Stamicarbon* Court, put S&P to the Hobson's choice of not suing Comex for use of its name and Index, and indirectly thereby, use of its trade secrets in assuring the accuracy of that Index, or suing and losing forever all the proprietary value of that Index. This Court employed the least restrictive means practicable to preserve the confidentiality of legitimate and important trade secrets.

541 F. Supp. 1273, 1278 (S.D.N.Y. 1982).

Plaintiff's identity is far broader in scope than a litigant's trade secrets, hence the request for closure of the entire trial, but the concern is the same: if Plaintiff cannot seek redress in this Court except by exacerbating the alleged injury (i.e., by disclosure of his identity to the entire world), then he will have effectively lost the privacy war even if he wins on his claims at trial. *See also* Argument, Section II, *infra*.

Second, requiring Plaintiff to disclose his identity would deter similarly situated litigants in the future from seeking to enforce non-disclosure agreements that, by definition, protect their identity and confidential subject matter, and thereby play a negative role (as opposed to a significant positive role) in civil matters of this type.

Third, although the Parties' minor child is not a party to this litigation, the child's safety is at the heart of Plaintiff's claims in this case. *See Mot. For Leave to Proceed Under Pseudonym and For Protective Order, and Mem. In Support* (ECF No. 4) (the "Motion to

Proceed Under Pseudonym"). To keep the minor child's identity from potentially entering the public sphere means that the Parties' and the child's family members' identities must also be kept anonymous, to ensure that neither the public nor media can ascertain the minor child's identity, thereby promoting the child's safety during this litigation. The most reliable way to ensure the minor child's safety and privacy is to close any trial in its entirety to the public and media. *Jessup v. Luther*, 277 F.3d 926, 928 (7th Cir. 2002) ("When there is a compelling interest in secrecy, as in the case of trade secrets, the identity of informers, and the privacy of children, portions and in extreme cases the entirety of a trial record can be sealed. . . . The interest in secrecy is weighed against the competing interests case by case.").

Plaintiff acknowledges that in *National Organization for Marriage v. McKee*, this Court, addressing the "logic" prong, noted, "particularly in a case where a federal court strikes down a state law on constitutional grounds, public access to trial evidence plays a significant positive role with respect to the overall judicial process." No. 09-538-B-H, 2010 WL 3364448, at *3 (D. Me. Aug. 24, 2010). Here, in contrast, the dispute is purely private and does not involve any public interest such as the constitutionality of a state law. Moreover, the decision in *McKee* was on a motion to stay pending appeal and the Court was addressing, *inter alia*, the likelihood of success prong. It was not a final determination on the First Amendment access issue.

Nor is there a common law right of access to any civil jury trial in this matter. As set forth above, the First Circuit instructed in *Kravetz* that subject matter traditionally considered private rather than public "weigh[s] more heavily against access than conduct affecting a substantial portion of the public." 706 F.3d at 62 (internal quotation marks omitted). Here, identification of Plaintiff as the winner of the lottery is the type of private financial information that weighs heavily against disclosure, as are the safety and privacy interests of the Parties'

minor child. *Id.* ("Third-party privacy interests, in particular, have been referred to as a venerable common law exception to the presumption of access . . . and weigh heavily in a court's balancing equation" (internal quotation marks omitted)).

Based on the foregoing, Plaintiff respectfully submits that, when weighing the competing interests between public access and the Parties' and third parties' privacy interests, this is one of those exceptional cases where any trial in this matter should be closed in its entirety to the public and media.

## II. Pseudonyms Must Be Maintained For The Parties And Their Family Members Throughout This Litigation.

Intertwined with the issue of closing any trial in this matter to the public and media is Plaintiff's position that this is one of those "exceptional cases" in which the identities of the Parties, their minor child, and their family members should remain unknown to the public and media, including through trial. When deciding whether the use of pseudonyms in a civil case is appropriate, the First Circuit has directed courts to weigh the "totality of the circumstances," considering that pseudonyms should only be used in "exceptional cases," including those cases where (1) a "would-be Doe who reasonably fears that coming out of the shadows will cause him unusually severe harm (either physical or psychological);" (2) "identifying the would-be Doe would harm innocent non-parties;" or (3) "the injury litigated against would be incurred as a result of the disclosure of the party's identity." *Doe v. MIT*, 46 F.4th 61, 70-72 (1st Cir. 2022) (internal quotation marks and punctuation omitted).[3] This Court "enjoys broad discretion to

---

[3] Even before the First Circuit's decision in *Doe v. MIT*, courts in and outside the First Circuit had recognized that a party may proceed anonymously in litigation under certain "exceptional circumstances," including "where the injury litigated against would be incurred as a result of the disclosure of the plaintiff's identity." *See, e.g.*, *Patrick Collins, Inc. v. Does 1-38*, 941 F. Supp. 2d 153, 160-61 (D. Mass. 2013). As one commentator has observed, who is serving as co-counsel for the Intervenor in this case: "Courts often note that plaintiffs can proceed pseudonymously if the 'injury litigated against would be incurred as a result of the disclosure of the plaintiff's identity.' . . . Requiring plaintiffs to litigate under their names would undermine the very confidentiality that they sought to protect. And it would in turn in effect deny the courts the ability to effectively adjudicate the claims, which would be rendered

7

quantify the need for anonymity in the case before it," which "extends to the court's ultimate determination as to whether that need outweighs the public's transparency interest." *Id.* at 72. In vacating and remanding the lower court's decision, the First Circuit also observed that "there is no per se rule barring the use of pseudonyms at trial." *Id.* at 74; *see also Doe v. Town of Lisbon*, 78 F.4th 38, 46 (1st Cir. 2023) (pseudonym permitted for plaintiff because it implicated one of the categories identified in *MIT*).

Plaintiff previously laid out his reasons for seeking the use of pseudonyms to the Parties' names, which he incorporates herein. *See* Motion to Proceed Under Pseudonym. That filing set forth in detail the unusually severe harm that Plaintiff reasonably fears were his and his minor child's identities to be revealed. In addition, the "Catch-22" that the Court previously observed would occur if their identities were to be revealed at trial: Plaintiff will have won the battle but effectively lost the privacy war. *See also* Argument, Section I, *supra*. Accordingly, Plaintiff respectfully submits that the Parties' and their minor child's identities, as well as any of the Parties' family members' identities, should remain anonymous to the public and media, including through trial.[4]

**III. Alternatively, If The Court Does Not Close Any Trial Completely, It Should Order Partial Closure Of Any Trial And Further Order That Certain Trial Testimony Proceed Via Telephone Or Zoom (Audio Only).**

For the reasons stated herein and in the Motion to Proceed Under Pseudonym, the Court should close completely any trial in this matter from the public and media. However, if the

---

either formally or practically moot." Eugene Volokh, THE LAW OF PSEUDONYMOUS LITIGATION, 73 HASTINGS L.J. 1353, 1396 (July 2022) (quoting *M.M. v. Zavaras*, 139 F.3d 798, 803 (10th Cir. 1998) (internal citations omitted)).

[4] During the status conference convened by the Court on January 10, 2025, the Court asked the Parties to disclose in their briefs anticipated witnesses for trial. Given that discovery has barely "gotten off the ground" at this stage, Plaintiff is uncertain as to who he may call as witnesses. However, anticipated witnesses for trial may include (1) himself; (2) Defendant; (3) certain of the Parties' family members; (4) certain members of the security firm hired by Plaintiff to protect him and the Parties' minor child; and/or (5) those individuals who Defendant has disclosed Plaintiff's confidential information to in violation of the non-disclosure agreement at issue in this case.

Court is not so inclined, Plaintiff suggests an alternative approach: that all testimony of the Parties and any of their family members submitted to the jury be taken by telephone or Zoom (audio only) during any trial with appropriate safeguards, including, but not limited to, partial closure of any trial to the public and media where appropriate, to ensure the identities and other personal identifying information of the Parties and their family members remain anonymous. Although perhaps not as common in the context of a jury trial, since the COVID-19 pandemic, it has become common for hearings to proceed or testimony taken by telephone or Zoom. Although the planning and logistics may be challenging, under this alternative framework, the balancing of competing interests may be satisfied: the Parties' identities would remain anonymous (but see the concerns identified below), and the public and media would gain at least some access to the trial. There is also the possibility that certain testimony could be taken live, such as from witnesses who are members of Plaintiff's security team hired to protect him and his minor child, who, by their physical presence, would not lead the public or media to make a connection(s) that would potentially compromise Plaintiff's and his minor child's anonymity. There would still need to be adequate safeguards put in place, and Plaintiff anticipates that there would likely still need to be certain portions of the trial that are closed from the public and media, such as when a Party or his/her family members testify to their backgrounds or other personal identifying information that may compromise the anonymity of Plaintiff and his minor child.

To be clear, notwithstanding this alternative proposal, Plaintiff's position is that the Court should close completely any trial in this matter from the public and media. Plaintiff envisions certain risks associated with this alternative proposal that would not be at issue if the trial were completely closed. For one, in-person testimony would allow for more effective examination by

counsel than audio testimony and enable a jury to better evaluate witness credibility. Also, were a witness to identify Plaintiff by name during a portion of the trial that was made available to the public and media, regardless of whether done inadvertently or intentionally, it would break Plaintiff's anonymity with equal force. Still, if Plaintiff is ultimately faced with choosing between having a completely public trial versus proceeding under the alternative framework proposed herein, the latter option is the obvious choice for him.

**IV.     Plaintiff Respectfully Requests Oral Argument.**

Given the issues before the Court, Plaintiff respectfully requests that, pursuant to Local Rule 7(e), the Court schedule oral argument on this Motion, as Plaintiff believes that oral argument would assist the Court in making its decision on the relief requested herein.

## **CONCLUSION**

For all of the foregoing reasons, Plaintiff respectfully requests that the Court (1) grant this Motion and close any trial in this matter from the public and media; (2) alternatively, order that all testimony of the Parties and any of their family members submitted to the jury be taken by telephone or Zoom (audio only) during any trial with appropriate safeguards, including, but not limited to, partial closure of any trial to the public and media where appropriate, to ensure the identities and other personal identifying information of the Parties and their family members remain anonymous; (3) schedule oral argument on this Motion; and (4) grant him such other and further relief as it deems just and proper.

**[Remainder of Page Intentionally Left Blank]**

Dated at Portland, Maine this 7th day of February, 2025.

Respectfully submitted,

*/s/ Gregory Brown*

_____

Gregory Brown, Esq., Bar No. 9023
Louise M. Aponte, Esq., Bar No. 9285
LOWE YEAGER & BROWN PLLC
920 Volunteer Landing, Suite 200
Knoxville, TN 37915
(865) 521-6527
gb@lyblaw.net
lma@lyblaw.net


*/s/ Stephen B. Segal*

_____

Stephen B. Segal, Esq., Bar No. 5422
VERRILL DANA LLP
One Portland Square
Portland, ME  04101
(207) 774-4000
ssegal@verrill-law.com

Attorneys for Plaintiff John Doe

## **CERTIFICATE OF SERVICE**

      I hereby certify that on February 7, 2025, I caused the foregoing document to be filed using the Court's CM/ECF system, which will send notification of such filing to all counsel of record in the above-captioned matter.

Dated: February 7, 2025

                              */s/ Stephen B. Segal*

                              Stephen B. Segal, Esq., Bar No. 5422
                              VERRILL DANA LLP
                              One Portland Square
                              Portland, ME  04101
                              (207) 774-4000
                              ssegal@verrill-law.com
                              Attorney for Plaintiff John Doe