# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MAINE

| | |
|---|---|
| JOHN DOE,<br><br>    Plaintiff,<br><br>v.<br><br>SARA SMITH,<br><br>    Defendant | Civil Action No. 2:23-cv-00423-JAW |

## OPPOSITION TO PLAINTIFF'S MOTION FOR CLOSURE OF TRIAL, BY INTERVENOR MAINE TRUST FOR LOCAL NEWS

Intervenor Maine Trust for Local News opposes the closure of the trial in this case; opposes pseudonymity for the parties at trial; and opposes the use of audio-only testimony. American civil trials must be open to the public. There is no exception to this for trials related to non-disclosure agreements. And there is no exception for wealthy parties, notwithstanding the extra security problems that the very wealthy sometimes face.

### Incorporated Memorandum of Law

I. <u>**The trial should not be sealed.**</u>

  A. **The Federal Rules of Civil Procedure, the common-law right of access, and the First Amendment right of access preclude sealing the trial.**

"Every trial on the merits must be conducted in open court and, so far as convenient, in a regular courtroom." Fed. R. Civ. P. 77(b). "[T]he witnesses' testimony must be taken in open court unless a federal statute, the Federal Rules of Evidence, these rules, or other rules adopted by the Supreme Court provide otherwise." Fed. R. Civ. P. 43(a). Though Rule 77(b) "allows district judges the discretion to conduct proceedings in chambers," that is

1

only true "as long as the trial upon the merits is held in open court." *B.H. v. McDonald*, 49 F.3d 294, 297 (7th Cir. 1995).

These Rules implement the First Amendment and common-law rights of public access to civil trials. "The First and Fourteenth Amendments clearly give the press and the public a right of access to trials themselves, civil as well as criminal." *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 599 (1980) (Stewart, J., concurring). "[H]istorically, both civil and criminal trials have been presumptively open." *Id.* at 580 n.17 (lead opin.). "[E]ach of [the First Circuit's] sister circuits have considered whether the right [of public access] extends to at least some documents and proceedings in civil cases and have concluded that it does." *Courthouse News Service v. Quinlan*, 32 F.4th 15, 20 n.8 (1st Cir. 2022).

In particular, "the First Amendment embraces a right of access to civil trials." *Publicker Indus. v. Cohen*, 733 F.2d 1059, 1070 (3d Cir. 1984) (cleaned up). *See also N.Y. Civil Liberties Union v. N.Y.C. Transit Auth.*, 684 F.3d 286, 298 (2d Cir. 2012); *ACLU v. Holder*, 673 F.3d 245, 252 (4th Cir. 2011); *Detroit Free Press v. Ashcroft*, 303 F.3d 681, 695 n.11 (6th Cir. 2002); *Wilson v. Am. Motors Corp.*, 759 F.2d 1568, 1570 (11th Cir. 1985). Both "experience and logic"—the two elements considered in deciding whether a First Amendment right of access is established, *Press-Enterprise Co. v. Superior Court*, 478 U.S. 1, 9 (1986)—are satisfied as to civil trials. *See, e.g.*, *Publicker*, 733 F.2d at 1067-72.

Even setting aside the First Amendment right, "the common-law right of access extends to judicial records in civil proceedings," *In re Providence Journal Co., Inc.*, 293 F.3d 1, 13 n.5 (1st Cir. 2002); *see also Poliquin v. Garden Way*, 989 F.2d 527, 533 (1st Cir. 1993) ("[O]nly the most compelling showing can justify post-trial restriction on disclosure of testimony or documents actually introduced at trial."). This extends to civil "proceedings"

2

22756377.1

as well as to the records of civil proceedings. *See Nat'l Org. for Marriage v. McKee*, 649 F.3d 34, 70-71 (1st Cir. 2011); *Publicker*, 733 F.2d at 1066-67. And for good reason:

> Open trials assure the public that procedural rights are respected, and that justice is afforded equally. Closed trials breed suspicion of prejudice and arbitrariness, which in turn spawns disrespect for law. Public access is essential, therefore, if trial adjudication is to achieve the objective of maintaining public confidence in the administration of justice.

*Hartford Courant Co., LLC v. Carroll*, 986 F.3d 211, 221 (2d Cir. 2021) (quoting *Richmond Newspapers*, 448 U.S. at 595 (Brennan, J., concurring in the judgment)). These principles apply to civil proceedings as well as criminal ones. *See, e.g.*, *BP Expl. & Prod., Inc. v. Claimant ID 100246928*, 920 F.3d 209, 210 (5th Cir. 2019); *Doe v. Cath. Relief Servs.*, No. 1:20-CV-01815-JRR, 2024 WL 4335643, *2 (D. Md. Sept. 26, 2024); *In re Symington*, 209 B.R. 678, 694 (Bankr. D. Md. 1997). They also apply fully to civil disputes among private individuals:

> It is desirable that the trial of causes should take place under the public eye, not because the controversies of one citizen with another are of public concern, but because it is of the highest moment that those who administer justice should always act under the sense of public responsibility, and that every citizen should be able to satisfy himself with his own eyes as to the mode in which a public duty is performed.

*Cowley v. Pulsifer*, 137 Mass. 392, 394 (1884) (Holmes, J.) (speaking there as to the value of the fair report privilege); *see also NBC Subsidiary (KNBC-TV) v. Superior Court*, 980 P.2d 337, 351 n.14 (Cal. 1999) (quoting the same reasoning as a basis for rejecting the sealing of a civil trial). And this reasoning is at least equally strong for disputes about allocating massive winnings from a state-run lottery.

**B.    No special circumstances justify the sealing of the trial.**

Rules 43(a) and 77(b) provide for no exceptions, other than through statutes or other rules. No such exceptions may or should be engrafted on the rules, except through the work of the Rules Committee or of Congress.

But even if this Court concludes that some exceptions may be justified despite the text of the Rules, the common law and the First Amendment nonetheless dictate that "only the most compelling reasons can justify non-disclosure of judicial records that come within the scope of the common-law right of access." *United States v. Kravetz*, 706 F.3d 47, 59 (1st Cir. 2013) (cleaned up); *see also FTC v. Standard Fin. Mgmt. Corp.*, 830 F.2d 404, 408 n.4, 410 (1st Cir. 1987). "The starting point must always be the common-law presumption in favor of public access to judicial records." *Nat'l Org. for Marriage*, 649 F.3d at 70. "The presumption . . . favors openness," and "it is the party seeking to keep documents sealed who must make a showing sufficient to overcome the presumption of public access." *Id.* at 71. This applies to "proceedings" as well as "documents." *Id.*

Likewise, under the First Amendment right of access, there must be a showing of "'an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest.'" *Publicker*, 733 F.2d at 1071 (quoting *Press-Enterprise Co. v. Superior Ct.*, 464 U.S. 501, 510 (1984)). Thus, in some situations, courts may allow sealing of "financial records of a wholly owned business, family affairs, illnesses, embarrassing conduct with no public ramifications, and similar matters." *United States v. Kravetz*, 706 F.3d 47, 62 (1st Cir. 2013), or even of certain portions of trials, *see, e.g.*, *Standard & Poor's Corp. Inc. v. Commodity Exch., Inc.*, 541 F. Supp. 1273, 1277 (S.D.N.Y. 1982). But this is true only for limited, narrow sealing of particular documents or portions of proceedings.

None of the cases cited by Plaintiff, and none of the civil trial cases known to Intervenor (except perhaps for rare proceedings involving national security), have allowed total closure of a trial. *Cf. Standard & Poor's*, 541 F. Supp. at 1277-78 (stressing that a

closure was permissible in part because "disruption to the proceedings was minimal and temporary—the courtroom was closed for less than one hour during the whole of a five day hearing"); *Jessup v. Luther*, 277 F.3d 926 (7th Cir. 2002) (dealing solely with the sealing of one document, a settlement agreement). While a few cases, such as *Jessup*, mention in passing the possibility that "the entirety of a trial record can be sealed," they stress that this is so only "in extreme cases," 277 F.3d at 928; and they do not discuss the possibility that the entire trial would be sealed as well.

Nor can the public right of access be overcome by the parties' nondisclosure agreement. The existence of a confidentiality clause does not "automatically justify sealing documents in litigation." *Schnatter v. 247 Grp.*, 2024 WL 3165317, at *2 (W.D. Ky. 2024). "Once the parties resort to the courts, however, their confidentiality agreement does not, and cannot, authorize the sealing of a presumptively public federal court record. The parties are privileged to arbitrate in secret, but they must litigate in public." *Martis v. Dish Network*, No. 1:13-CV-1106, 2013 WL 6002208, at *2 (W.D. Mich. Nov. 12, 2013). Having not availed themselves of the option of including a confidential arbitration clause in their nondisclosure agreement, the parties must litigate in a public forum.

> The fact that the parties privately bargained to keep a proceeding confidential does not nullify the requirement that a party proffer a qualifying reason to justify sealing that document *when put at issue in a public forum*. If the court accepted petitioner's position that the mere existence of such a "bargain" (and whatever its unspecified "benefits" to petitioner) provides the necessary justification, then the parties in any litigation could circumvent the right of public access through private agreement. That outcome is untenable.

*Bloom Energy Corp. v. Badger*, No. 21-CV-02154-PJH, 2021 WL 4079208, at *12 (N.D. Cal. Sept. 8, 2021).

Nor do any cases authorize the sealing of civil cases simply because the parties have a minor child whose identity they seek to conceal, or because the parties seek to conceal their wealth. If disclosure of a person's wealth could justify sealing, simply because of the possibility that the wealth may make the person a target, then there would be two systems of justice—a secret one for privacy-seeking ultra-wealthy people and a public one for the rest of us. That cannot be so.

## II. The parties should not be able to proceed under pseudonyms at trial.

Besides the trial being open to the public, the parties' names should be open to the public as well. Even courts that have allowed pseudonyms during the early stages of trial have generally been reluctant to extend this to trial. "[T]he balance between a party's need for anonymity and the interests weighing in favor of open judicial proceedings may change as the litigation progresses." *Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1069 (9th Cir. 2000). As this Court noted earlier in this case,

> As the caselaw has repeatedly shown, even when pseudonyms are allowed during the discovery phase in the run-up to trial, there is no guarantee that the Court will sanction their use if the case goes to trial. *See, e.g., Tourangeau v. Nappi Distribs.*, No. 2:20-cv-00012-JAW, 2023 U.S. Dist. LEXIS 29369 (D. Me. Feb. 22, 2023) (rejecting a request to use pseudonyms generally at trial but allowing their use for publicly available exhibits); *see also Doe v. Mass. Inst. of Tech.*, 46 F.4th at 73 ("[A]n order granting pseudonymity should be periodically reevaluated if and when circumstances change").

Order on Motion to Unseal, ECF No. 71, at 28-29.

This is why, though "there is no per se rule barring the use of pseudonyms at trial," *Doe v. MIT*, 46 F.4th 61, 74 (1st Cir. 2022) (citing *Doe v. Neverson*, 820 F. App'x 984, 987 (11th Cir. 2020)), such pseudonymity at trial appears to be especially hard to justify. It may be permissible in some trials involving highly intimate personal details. *See Neverson* (alleged sexual assault); *id.* (giving as an example *Plaintiff B v. Francis*, 631 F.3d 1310, 1315
22756377.1

(11th Cir. 2011), where "women who were videotaped engaging in sexual conduct when they were minors were entitled to proceed anonymously at trial"). But it should be rare even then, and certainly in cases lacking such intimate disclosures. As the First Circuit in *Doe v. MIT* noted (in the passage quoted in part by this Court's Order on Motion to Unseal),

> District courts must be mindful that "the balance between a party's need for anonymity and the interests weighing in favor of open judicial proceedings may change as the litigation progresses." *Advanced Textile*, 214 F.3d at 1069. Consequently, an order granting pseudonymity should be periodically reevaluated if and when circumstances change. *See, e.g., Lawson v. Rubin*, No. 17-6404, 2019 WL 5291205, at *2-3 (E.D.N.Y. Oct. 18, 2019) (explaining why pseudonymity was appropriate in pretrial stages of sexual assault litigation but not during trial); *cf. Advanced Textile*, 214 F.3d at 1068 (referring to arguments that "use of pseudonyms would prejudice the jury" and impair opposing party's ability to impeach witnesses (citing *James*, 6 F.3d at 240-41)).

46 F.4th at 73.

In particular, as *Lawson* (cited by *Doe v. MIT*) noted, a "witness who proceeds under her real name and is subject to a potential rigorous cross-examination may feel more inhibited than a pseudonymous witness from fabricating or embellishing an account." 2019 WL 5291205, at *3. "Although testifying may be stressful in and of itself, attempting to testify while using pseudonyms may lead to frequent unnatural pauses, unintentional mistakes, or confusion," so that "a witness's credibility in front of the jury may be undermined by unnatural demeanor." *Id.* Moreover, "In the event a witness inadvertently testified to a plaintiff's real name, the Court would have to immediately excuse the jury in the middle of critical testimony, admonish the witness, and provide a limiting instruction, which may signal to the jury that either the attorney or the witness acted improperly." *Id.* For all these reasons, this Court should likewise conclude that the parties may not proceed under pseudonyms at trial.

> Finally, Plaintiff quotes Intervenor's co-counsel as writing, in a law review article,
>
>> Courts often note that plaintiffs can proceed pseudonymously if the "injury litigated against would be incurred as a result of the disclosure of the plaintiff's identity." . . . Requiring plaintiffs to litigate under their names would undermine the very confidentiality that they sought to protect. And it would in turn in effect deny the courts the ability to effectively adjudicate the claims, which would be rendered either formally or practically moot.

ECF No. 179, at 7-8 n.3. But Plaintiff omits the immediately following paragraph from that article:

> Read broadly, this concern would authorize pseudonymity in nearly all defamation or disclosure of private facts claims (at least when the information had not been already widely spread on the Internet). After all, requiring such plaintiffs to identify themselves would only further exacerbate the injury. And a few cases have taken this view. But the dominant view is contrary, which is why libel and privacy cases (see Part III.F.2) are routinely litigated without pseudonyms.

Eugene Volokh, *The Law of Pseudonymous Litigation*, 73 Hastings L.J. 1353, 1396 (2022) (footnotes omitted). That article's summary of the cases is thus entirely consistent with this brief's: Courts' dominant view is that pseudonymity (especially at trial) is generally not allowed, even in cases where plaintiffs seek to preserve their reputations, privacy, or confidentiality.

### III. **Plaintiff's proposed alternatives are overly broad and impractical.**

The right to attend a trial and observe witness testimony is invaluable and irreplaceable. "[O]ne cannot transcribe an anguished look or a nervous tic. The ability to see and to hear a proceeding as it unfolds is a vital component of the First Amendment right of access—not, as the government describes, an incremental benefit." *ABC, Inc. v. Stewart*, 360 F.3d 90, 99 (2d Cir. 2004). This is one reason why courts view access to transcripts as an inadequate substitute for the ability to observe a trial. *See, e.g.*, *id.,*; *Publicker*, 733 F.2d at 1072 ("[T]he availability of a trial transcript is no substitute for a

public presence at the trial itself. As any experienced appellate judge can attest, the cold record is a very imperfect reproduction of events that transpire in the courtroom.") (quoting *Richmond Newspapers,* 448 U.S. at 597 n.22 (Brennan, J., concurring in the judgment)); *United States v. Antar*, 38 F.3d 1348, 1360 n.13 (3d Cir. 1994) (saying much the same, and specifically noting the importance of observing the parties' "demeanor"); *Soc'y of Prof'l Journalists v. United States Sec'y of Labor*, 616 F. Supp. 569, 578 (D. Utah 1985) (cleaned up) ("[T]he full flavor of [a] hearing cannot be sensed from the sterile sheets of a transcript. Emotions, gestures, facial expressions, and pregnant pauses do not appear on the reported transcript. Much of what makes good news is lost in the difference between a one-dimensional transcript and an opportunity to see and hear testimony as it unfolds."); *Barrett v. Volz*, No. 2:16-CV-209, 2016 WL 4082640, at *8 (D. Vt. Aug. 1, 2016) (treating the right of "member[s] of the public" to "observe the demeanor and interaction of the participants" in a hearing as protected by the right of access).

And of course audio testimony likewise cannot capture "anguished look[s]," "nervous tic[s]," "gestures," or "facial expressions." Thus, for instance, *Morris Publ'g Grp., LLC v. State*, 136 So. 3d 770, 780 (Fla. Dist. Ct. App. 2014), held that providing audio-only-access to voir dire was unconstitutional in part because "[b]y limiting their observation of the proceedings to audio, [the petitioning media entities] were deprived of the ability to see the judge, prospective jurors, and attorneys to evaluate their demeanor, body language, and other non-verbal expressions." This logic applies to witnesses who are being questioned at trial as well as to jurors who are being questioned at voir dire.

To be sure, in certain circumstances, generally involving undercover law enforcement officials testifying against violent criminals, *United States v. Lucas*, 932 F.2d

1210, 1217 (8th Cir. 1991), a witness's appearance may properly be obscured. But this case appears to be quite distant from those rare situations. To the extent that Plaintiff is concerned about possible risk to himself or his family, that possible risk stems simply from Plaintiff's wealth. Under that rationale, the secretly wealthy would be able to testify by audio only in all cases—involving nondisclosure agreements, real estate disputes, commercial transactions, and more—in which their wealth might be disclosed. That cannot be the rule, in a legal system that aims to treat rich and poor equally.

IV. **<u>Intervenor requests oral argument.</u>**

Intervenor agrees with Plaintiff that oral argument should be scheduled on this motion.

**Conclusion**

Like all other litigants—regardless of their wealth or whether they are seeking to enforce nondisclosure agreements—Plaintiff should have his claims tried in open court, without pseudonyms, and with live testimony that all observers can see.

Dated: February 28, 2025

Respectfully submitted,
<u>/s/ Sigmund D. Schutz</u>
<u>/s/ Alexandra A. Harriman</u>
Preti Flaherty, LLP
One City Center
P.O. Box 9546
Portland, ME 04112-9546
(207) 791-3000
sschutz@preti.com
aharriman@preti.com

<u>/s/ Eugene Volokh</u>
Professor of Law
UCLA School of Law

385 Charles E. Young Dr. E
Los Angeles, CA 90095
(310) 206-3926
volokh@law.ucla.edu
*Pro hac vice*

*Attorneys for Intervenor
Maine Trust for Local News*