UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

| | |
|---|---|
| JOHN DOE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 2:23-cv-00423-JAW |
| | ) |
| SARA SMITH, | ) |
| | ) |
| | ) |
| Defendant. | ) |

**PLAINTIFF'S REPLY TO OPPOSITION BY DEFENDANT**

Plaintiff's Motion for Closure of Trial ("Motion") raises the important legal question: "Who will ever be able to enforce in court an NDA that protects their identity, confidential information, and safety, if forced to proceed to a public trial?" Defendant's opposition brief ("Response") offers the troubling yet correct response – *no one* – and concludes (even more concerningly) that "Plaintiff should recognize that reality and dismiss this ill-advised lawsuit." (ECF No. 195, at 1). What Defendant refuses to acknowledge is that this is one of those limited cases where the total closure of trial and continued use of pseudonyms is justified.

The central issue for trial is whether and to what extent Defendant breached the parties' NDA by disclosing Plaintiff's identity and Protected Subject Matter (i.e., confidential information about Plaintiff *beyond* the mere fact that he won the lottery) to unauthorized persons, thereby jeopardizing the safety of Plaintiff and his minor child. (*See* ECF No. 1 at ¶ 21). Of relevance to the Motion, the language of the NDA plainly states that "irreparable harm [could result] to both parties, their [minor child], close family members, friends, and associates if members of the media

1

or the public in general…discover [Plaintiff's] identity and assets." (ECF No. 1-1). Even Defendant admits that media and public access to a trial in this case would "defeat[] the point of the NDA and the lawsuit." (ECF No. 195, at 1). For these reasons and those that follow, complete closure of trial with the continued use of pseudonyms is imperative. Anything less would deprive Plaintiff of the very relief and bargained-for protection that he seeks, rendering the entirety of these proceedings nugatory and exposing him and his minor child to the risk of irreparable harm.

I. **There is no First Amendment or common law right of public or media access to any trial in this matter.**

Taking advantage of the "Catch-22" that Plaintiff is in, Defendant asserts that federal civil trials are presumptively open and that "the Court should conclude that the press and the public have a First Amendment right to attend any trial in this matter" based on the ruling of other circuits. (ECF No. 195, at 4-7). To be clear, there is <u>no</u> absolute right of public access to civil trials, whether under the First Amendment, common law, or the Federal Rules of Civil Procedure.[1] *See U.S. v. Three Juveniles*, 61 F.3d 86, 88 n.2 (1st Cir. 1995) (the First Circuit has never decided whether the First Amendment mandates a general right of access); *U.S. v. Kravetz*, 706 F.3d 47, 59 (1st Cir. 2013) (in the context of judicial records, the public's common law right of access is vibrant, but not unfettered). In *Richmond Newspapers, Inc. v. Virginia*, even Justice Stewart – whose concurrence Defendant cites, (ECF No. 195, at 5), and who would have gone beyond the Court's ruling to hold that the First Amendment gives the media and public a right of access to civil trials

---

[1] There would be no need for a First Amendment or common law analysis at all if Rules 43(a) and 77(b) of the Federal Rules of Civil Procedure provided an absolute right of public access to civil trials. Even courts citing these Rules recognize that any presumptive right of access may be overcome where circumstances warrant. *See e.g., Standard & Poor's Corp., Inc. v. Commodity Exch., Inc.,* 541 F. Supp. 1273, 1275-76 (S.D.N.Y. 1982) (citing Rule 77(b) but noting that "presumption even when constitutionally compelled clearly can be overcome in proper circumstances"). Defendant cites *no* case holding that the Federal Rules of Civil Procedure confer a right of public access to civil trials.

2

– emphasized that any such right of access is not absolute and that "[t]he preservation of trade secrets, for example, might justify the exclusion of the public from at least some segments of a civil trial." 448 U.S. 555, 600 (1980) (Stewart, J., concurring). Given that this case involves not only the preservation of Plaintiff's identity and confidential information but the very safety of Plaintiff and his minor child, any trial should be closed under both a constitutional and common law analysis.

### A. No First Amendment Right of Public Access

Defendant's argument that the media and public have a First Amendment right of access in this case falls short under the Supreme Court's two-pronged "experience and logic test." (*See* ECF No. 179, at 3-4). Defendant does not even address the "experience and logic" test in her Response and thus seemingly waives any argument that a First Amendment right of access should attach. *See U.S. v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990) ("issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived"). In fact, the "logic" prong – whether public access will play a significant positive role in this private NDA case at trial – is not satisfied here. A public trial will disclose Plaintiff's identity and confidential information to the media and the public, thereby putting his and his minor child's safety at risk of irreparable harm and depriving him of the very relief he seeks. Accordingly, any trial in this case should be closed because no First Amendment right of access attaches. *See Standard & Poor's*, 541 F. Supp. at 1276 (closure of part of a trial may be ordered to avoid irreparable harm).

Furthermore, even if a First Amendment right of access attaches in this case, closure of any trial passes strict scrutiny. There is an overriding interest in protecting Plaintiff's and his minor child's safety, and closure of trial is essential to preserve that interest and is narrowly tailored to serve that interest because anything short of complete closure would disclose the identity of

Plaintiff and put his and his minor child's safety at risk. *Cf. Martin v. Bissonette*, 118 F.3d 871, 875 (1st Cir. 1997) (closure of courtroom to all spectators during key witness's testimony did not violate defendant's Sixth Amendment right to public trial where witness had been intimidated by defendant and others, under analysis similar to strict scrutiny under First Amendment[2]).

### B. No Common Law Right of Public Access

Defendant offers *no* argument that the media and the public have a common law right of access to any trial in this case. Under a common law analysis, this Court must "carefully balance the presumptive public right of access against the competing interests that are at stake in a particular case," taking into account that family affairs and the privacy rights of participants and third parties will "weigh more heavily against access." *Kravetz*, 706 F.3d at 59, 62. That balance weighs in favor of a closed trial. There is simply no way to grant Plaintiff the relief he seeks – to protect his identity and his and his minor child's safety– if the media and public are granted access to this trial.

Defendant's quip that "even rich and famous people are required to try their messy, embarrassing, civil cases in public," (ECF No. 195, at 9), is overly broad and inapposite. It is also wholly dismissive of the safety concerns that undergird this case. Plaintiff does not seek closure of trial to conceal any "messy or embarrassing" subject matter from the public. Rather, to quote the parties' NDA, Plaintiff seeks to protect himself and his minor child from the "irreparable harm [that could result]…if members of the media or the public in general…discover [Plaintiff's]

---

[2] The test employed in *Martin* was as follows: "'[T]he party seeking to close the hearing must advance an overriding interest that is likely to be prejudiced, the closure must be no broader than necessary to protect that interest, the trial court must consider reasonable alternatives to closing the proceeding, and it must make findings adequate to support the closure.'" *Martin*, 118 F.3d at 875 (quoting *Waller v. Georgia*, 467 U.S. 39, 48 (1984)).

identity and assets." (ECF No. 1-1).  This risk of irreparable harm is specific to this case and warrants the closure of any trial.

> II.  **Given the totality of the circumstances and relevant paradigms set forth by the First Circuit, the continued use of pseudonyms is warranted.**

It is unclear from the Response whether Defendant actually opposes a closed trial with the use of pseudonyms or simply believes that "it would be impossible" to carry out. (ECF No. 195, at 1).  Defendant acknowledges that she "would certainly prefer to maintain her anonymity" but does not see how it will work as a practical matter if all of the non-party witnesses testify about "what the parties said and did." (*Id.* at 4).  Despite what may be confusion on Defendant's part, her preference for continued anonymity can be accomplished under the First Circuit's framework for evaluating the issue of pseudonymity and, as discussed herein and in the Motion, by closing in its entirety any trial in this matter from the public and media.

The continued use of pseudonyms is justified here where Plaintiff's identity – and the risk of his and his minor child's safety by public disclosure of his identity – are <u>central</u> to the case. To be clear, there is no per se rule that parties must reveal their identities once their case goes to trial. *See Doe v. MIT,* 46 F.4th 61, 74 (1st Cir. 2022).  The First Circuit set forth in *Doe v. MIT* four paradigms "in which party anonymity ordinarily will be warranted." *See id.* Three of those four paradigms are satisfied here: (1) Plaintiff reasonably fears that public disclosure of his identity and confidential information will put his safety at risk and cause him irreparable harm; (2) disclosure of Plaintiff's identity will jeopardize his minor child's safety; and (3) the very injury litigated against – disclosure of Plaintiff's identity and confidential information and the attendant risk of physical harm -- would be incurred as a result of the disclosure of the parties' identities.[3]

---

[3] The fourth paradigm is not relevant here and involves suits that are bound up with a prior proceeding made confidential by law.  *See Doe*, 46 F.4th at 71.

Pseudonymity is therefore appropriate, up to and including any trial in this case and despite any potential procedural challenges.

### III. This Court may, within its discretion, consider reasonable alternatives to closing the trial.

Although Plaintiff's primary position is that complete closure of the trial is necessary and warranted, he did propose some alternatives for the Court to consider and in the event the Court disagrees. (*See* ECF No. 179, at 8-10). Defendant objects to any alternative that would permit the audio or Zoom testimony of the parties and their family members. (*See* ECF No. 195, at 10). Nevertheless, it is within this Court's discretion to find that there is "good cause in compelling circumstances and with appropriate safeguards" to allow a witness' testimony via contemporary transmission.[4] *See* Fed. R. Civ. P. 43(a); *see also Blue Cross & Blue Shield of Florida, Inc. v. Davita, Inc.,* No. 3:19-cv-574-BJD-MCR, 2022 WL 18492515, at *1-2 (M.D. Fl. May 27, 2022) (decision to allow testimony in open court by contemporaneous transmission falls within court's discretion as to whether "good cause in compelling circumstances" exists).

### CONCLUSION

Plaintiff specifically entered into a private NDA with Defendant to protect his identity and confidential information and his and his minor child's safety. Despite Defendant's efforts to frame him as nothing more than one of the "rich and famous people [who] are required to try their messy, embarrassing civil cases in public," this case is that rare proceeding that hinges on the

---

[4] Ironically, another alternative would be for the Court to require any journalist or spectator in the courtroom to sign a non-disclosure agreement that prevents them from disclosing the identities of the parties and their family members to the public. *See In re Samsung Telecommunications of America, Inc.,* Nos. 05-99-01949CV, 05-99-01960-CV, 1999 WL 1081387, at *2 (Tex. App. Ct. Dec. 2, 1999) (not designated for publication) (trial court did not abuse discretion in requiring spectators to sign non-disclosure undertaking in order to be present during portions of trial involving trade secret information).

nondisclosure of a party's identity to protect the safety of the party and non-parties. It therefore necessitates the complete closure of trial or a reasonable alternative that will protect the identities and the safety of Plaintiff and his minor child. For all of these reasons, Plaintiff respectfully requests that this Court grant his Motion for Closure of Trial.

Respectfully submitted this 14th day of March, 2025

By: /s/ Louise M. Aponte
Gregory Brown (ME Bar No. 9023)
Louise M. Aponte (ME Bar No. 9285)
LOWE YEAGER & BROWN PLLC
920 Volunteer Landing, Suite 200
Knoxville, Tennessee 37915
Phone: (865) 521-6527
Fax: (865) 637-0540
gb@lyblaw.net
lma@lyblaw.net

and

Stephen B. Segal, Esq., Bar No. 5422
VERRILL DANA LLP
One Portland Square
Portland, ME 04101
(207) 774-4000
ssegal@verrill-law.com

*Attorneys for Plaintiff John Doe*

## **CERTIFICATE OF SERVICE**

      The undersigned hereby certifies that a true and correct copy of the foregoing was filed with the Clerk of the District Court using the CM/ECF system on this 14th day of March, 2025. Notification of this filing was sent to all parties registered with the Court's electronic filing system.


                                              */s/ Louise M. Aponte*
                                              Louise M. Aponte